59 F.3d 80
 131 Lab.Cas. P 58,056
 MINNESOTA ASSOCIATION OF NURSE ANESTHETISTS; Gayle McKay,
Ladonna Schweer; John Okonek; Bernadine Okonek; Annette
Atchison; Fred Benjamin; Bart Barry; Faye Leatherman;
Sue Milbach; Sandra Henschke; Judith A. Schmidt; Gary
Hagen, Appellees,
v.
UNITY HOSPITAL; Mercy Hospital; William MacNally,
President and Chief Executive Officer of Unity and Mercy
Hospitals; Allina Health System Corp.; Mark Sperry, M.D.;
Gary Baggenstoss, M.D.; John Murphy, in his capacity as
Vice President of Unity and Mercy Medical Centers; James
Cumming, M.D.; John Rydberg, M.D.; Midwest Anesthesia,
P.A.; Thelma M. Albay, M.D.; Minda Castillejos, M.D.;
Teri Heil, M.D.; Sang Hong, M.D.; Ted Janossy, M.D.;
Raymond Kloepper, II, M.D.; John Magdsick, M.D.; Thomas
Maggs, M.D.; Thomas Polta, M.D.; John Roseberg, M.D.; Jai
Suh, M.D.; Jeffrey Yue, M.D.; Mark Eggen, M.D.;
Metropolitan Anesthesia Network; Allen Tank; Theodore
Grindal, Esq.; Craig Johnson, M.D., both individually and
in his capacity as President of the Minnesota Society of
Anesthesiologists; St. Cloud Hospital; John Frobenius,
Chief Executive Officer of St. Cloud Hospital; Linda
Chimielewski, Vice President Hospital Operations of St.
Cloud Hospital; Anesthesia Associates of St. Cloud, Ltd.;
Gary Boeke, M.D.; Philip F. Boyle, M.D.; L. Michael
Espeland, M.D.; Alan Espelien, M.D.; Paul J. Halverson,
M.D.; Lanse C. Lang, M.D.; A. Wade McMillan, M.D.;
William H. Rice, M.D.; Allan Reitz, M.D.; Annette E.
Zwick, M.D., Appellants.
 No. 94-4017.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1995.
Decided June 29, 1995.
 
 John Dwyer French, Minneapolis, MN, argued (Jay D. Christiansen, Elizabeth L. Taylor and Richard A. Duncan, on brief), for appellant.
 Herbert J. Stern, Roseland, NJ, argued (William S. Rosen, on brief), for appellee.
 Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE, Senior District Judge.*
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 Plaintiffs, Certified Registered Nurse Anesthetists (CRNAs), alleged a wide-ranging conspiracy between hospital administrators, doctors, and others in violation of federal and state competition laws and the Minnesota whistleblower statute, Minn.Stat. Sec. 181.932. The district court below granted a preliminary injunction to the plaintiffs under the whistleblower statute barring the defendants from discharging, threatening to discharge, or penalizing any of the plaintiff CRNAs, or others, because of their participation in this lawsuit.
 
 
 2
 We dissolve the preliminary injunction.I.
 
 
 3
 Anesthesia may be administered by medical doctor anesthesiologists (MDAs) or CRNAs. Until recently, the CRNAs here worked as staff for the hospitals where they practiced, namely, Unity Hospital, Mercy Hospital, and St. Cloud Hospital. Pursuant to a 1991 audit, an insurance company discovered some evidence of double-billing at Unity and Mercy Hospitals. Some time thereafter, some CRNAs, in meetings with hospital administrators, alleged that MDAs were engaged in these fraudulent billing practices. The hospitals say that, in 1993, they decided that the structure of anesthesia staffing should be changed to promote greater efficiency, and the next year they did in fact change the employment status of the CRNAs to independent contractors.
 
 
 4
 The district court noted that the "crux of plaintiffs' claims is that defendants have terminated or threatened to terminate CRNAs not as a result of good faith efforts to reduce costs but, rather, in retaliation for their disclosure to the defendant hospitals of the fraudulent billing practices attributable to defendant MDAs." Minnesota Assoc. of Nurse Anesthetists v. Unity Hospital, No. 3-94-1446, at 5 (D.Minn. filed Nov. 17, 1994) (Order). Plaintiffs asked for injunctive relief restraining the defendants from taking adverse action against the plaintiffs or anyone who might come forward with information to support the plaintiffs' cause. Id.
 
 
 5
 The district court noted, and sought to apply, this circuit's framework for analyzing requests for preliminary injunctive relief that is set forth in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981) (en banc). Under Dataphase, in deciding whether to grant such relief, a court should consider the threat of irreparable harm to the movant, the movant's probability of success on the merits, the balance of the potential harms to the parties litigant, and the public interest. Id. The court found that the plaintiffs had met their burden as to all four of the Dataphase considerations, but discussed only two of them.
 
 
 6
 Regarding irreparable harm, the district court found that the plaintiffs sought to "vindicate the intent and plain meaning" of section 181.932. Order at 6. This statute states:
 
 
 7
 An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: ... the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official[.]
 
 
 8
 Minn.Stat. 181.932 subd. 1(a). In finding irreparable harm, the court also noted that "[p]laintiffs have made serious allegations against defendants and have had the conditions of their employment altered." Order at 6.
 
 
 9
 The district court concluded as well that plaintiffs had made a sufficient showing on the merits to be entitled to an injunction, but not before suggesting that the plaintiffs had a rather weak case:
 
 
 10
 Defendants make out a colorable legal case for the inadequacy of plaintiffs' evidence and, if this was a motion for summary judgment, they might be correct.... There is no requirement that the court find, as a matter of law, that plaintiffs have proved their case sufficiently to withstand a motion under Rule 56. Rather, the court is required merely to balance the equities of this specific case and to make a finding, one way or the other, concerning the movants' possibilities of succeeding on the merits. It is not required that the movant prove up his case with mathematical certainty.
 
 
 11
 Order at 7-8.
 
 II.
 
 12
 We note at the outset of our analysis that there is some discontinuity between the statute, the litigation, and the relief granted. The main concern of the district court's order, as amended, is to prevent the defendants from penalizing plaintiffs or others who might participate in this litigation. Many of the defendants enjoined, however, do not employ any of the plaintiffs. The statute, more importantly, provides no protection for an employee, or others who might come forward with evidence to support that employee, when an employee sues an employer; rather, it prohibits penalizing an employee for reporting a violation of law. We therefore fail to understand how the statute provides a premise for the injunction's prohibitions on employer personnel actions based on employees' participation in this litigation. The final sentence of the order, however, does invoke section 181.932 and exhorts the defendants not to violate that statute, so we will proceed to address the merits of the injunction.
 
 
 13
 Regarding preliminary injunctions to prevent an employer from discharging an employee, we have noted that while termination of employment harms the employee, the harm is not necessarily irreparable and can be compensated for by money damages. O'Connor v. Peru State College, 728 F.2d 1001, 1003 (8th Cir.1984). An outright grant of preliminary relief in employee discharge cases, moreover, can defeat or severely burden the employer's prerogative of discharge. Id. "This is not to say that preliminary relief should never be granted in an employment discharge case. Rather, we merely note that in the present case the circumstances of discharge demonstrate that the balance of equities lies with the employer, and that [the plaintiff] has not demonstrated sufficient factors to offset the balance." Id. The plaintiffs' concerns in this case regarding economic harm are little different from those present in O'Connor. The loss of a job is quintessentially reparable by money damages. We note, too, as did the court in O'Connor, that the injunction here could work a very considerable hardship on the defendants.
 
 
 14
 We see no reason to conclude, moreover, as the district court did, that the fact that plaintiffs have sought to vindicate a Minnesota statute in filing this lawsuit is somehow relevant to the question of whether plaintiffs will suffer irreparable harm. All lawsuits seek to vindicate some legal principle, and we do not see how the principle enunciated in the relevant statute entitles this case to some kind of special status.
 
 
 15
 In deciding whether to grant a preliminary injunction, "likelihood of success on the merits is most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 184, 121 L.Ed.2d 129 (1992). The Minnesota whistleblower statute requires a plaintiff to prove three things for a prima-facie case: statutorily-protected conduct by the employee, adverse employment action by the employer, and a causal connection between the two. Nichols v. Metropolitan Center for Independent Living, Inc., 50 F.3d 514, 516 (8th Cir.1995) (quoting Hubbard v. United Press Int'l, 330 N.W.2d 428, 444 (Minn.1983)).
 
 
 16
 We have reviewed the affidavits submitted in support of the preliminary injunction and find that, at this early stage of litigation, plaintiffs' proof of causation is tenuous at best. The hospital became aware of billing problems in 1991. According to plaintiffs, CRNAs accused the MDAs of fraud some time thereafter, but they fail to pinpoint when. See Complaint p 67(b); Schweer Aff. p 2. Long intervals between the conduct that is said to motivate an employer and the adverse employment decision complained of tend to undermine the inference that the discharge was retaliatory. See Thompson v. Campbell, 845 F.Supp. 665, 675 (D.Minn.1994) (four months between complaint and discharge standing alone fails to create inference of retaliatory motive). Plaintiffs fail even to allege in their complaint, or swear in their affidavits, how much time passed between their "whistleblowing" and the restructuring. They must be aware of when the CRNAs made accusations about the MDAs, but they did not choose to share this important detail with the court.
 
 
 17
 The other evidence of causation is not convincing. Plaintiffs allege, and Schweer attests, that one of the Mercy/Unity CRNAs was informed by a member of the Board of Directors of Unity/Mercy "in words or substance that the CRNAs at Unity/Mercy were being terminated because of the MDAs' fraudulent billing." Complaint p 67(1); Schweer Aff. p 2. This statement is extremely vague, indeed it is ambiguous as well, and it has too little detail to entitle it to much credit. Perhaps as a result of this, the district court made no reference to it.
 
 
 18
 Based on the evidence, which we have carefully reviewed, we cannot yet say that plaintiffs have much hope of prevailing in their lawsuit. We are unclear exactly what the district court had in mind when it seemed to concede that plaintiffs' case could not presently withstand a motion for summary judgment, for such a concession makes it impossible to conclude that plaintiffs are likely to succeed on the merits. Our comments should not be taken to suggest that plaintiffs will be unable to prevail on their claims, only that they have so far made a showing inadequate to entitle them to preliminary relief.
 
 
 19
 In summary we conclude that neither irreparable harm, the balance of harms, nor the probability of success on the merits favors the plaintiffs. The preliminary injunction should be dissolved, and we therefore dissolve it.
 
 III.
 
 20
 For the foregoing reasons, the order of the district court is reversed.
 
 
 
 *
 The Honorable Andrew W. Bogue, United States Senior District Judge, for the District of South Dakota, sitting by designation