THREE SISTERS PETROLEUM, INC.; Larry Oswald;
James Morris; and Union Producing, L.L.C.
*v.* Jerry LANGLEY, Individually and
d/b/a Jerry Langley Oil Company;
Jerry Langley Oil Company, L.L.C.;
J.C. Langley; Gary Sewell; Richard Hill;
Russell Clay Murphy; Rodney Landes Sr.;
Steve Rogers; John Milam; and Glenn Sams

02–162                                              72 S.W.3d 95

Supreme Court of Arkansas
Opinion delivered April 11, 2002

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marcella J. Taylor, Sherry P. Bartley,* and *L. Kyle Hefley; Patton, Haltom, Roberts, McWilliams & Greer, L.L.P.*, by: *David P. Cotten*; and, *Of Counsel, Wiener, Weiss & Madison, A Professional Corporation*, by: *John M. Madison, Jr.,* and *Mark L. Hornsby*, for appellants.

*Compton, Prewett, Thomas & Hickey, L.L.P.*, by: *William I Prewett*, for appellees.

Donald L. Corbin, Justice. This is an interlocutory appeal of a temporary restraining order. Appellants Three Sisters Petroleum, Inc.; Larry Oswald; James Morris; and Union Producing, L.L.C., argue that the Union County Circuit Court abused its discretion in granting an *ex parte* restraining order in favor of Appellees Jerry Langley, individually and doing business as Jerry Langley Oil Company; Jerry Langley Oil Company, L.L.C.; J.C. Langley; Gary Sewell; Richard Hill; Russell Clay Murphy; Rodney Landes Sr.; Steve Rogers; John Milam; and Glenn Sams. This case was originally submitted to us on Three Sisters's motion to expedite the appeal and to stay the lower court proceedings. This court granted the motion on February 21, 2002. Our jurisdiction over this interlocutory appeal is pursuant to Ark. R. App. P.—Civ. 2(a)(6). For reversal, Appellants argue that the trial court abused its discretion in granting the temporary restraining order because Appellees failed to show (1) that they would suffer irreparable harm if an injunction was not granted, and (2) that there was a likelihood that they would succeed on the merits of their case. We agree with Appellants, and we reverse.

## Facts and Procedural History

The subject of this litigation is a dispute over the ownership of oil leases on wells located in Arkansas. The leases were previously owned by Phillips Petroleum, and were purchased in October 1999 by Appellant Three Sisters, a Louisiana corporation. Thereafter, Three Sisters assigned its rights in the leases to Appellant Union Producing, a Louisiana limited-liability company, which Three Sisters or its principals, including Appellants Oswald and Morris, own or control. On March 3, 2000, Appellee Jerry Langley, by and through his attorney, sent a letter to Three Sisters claiming that he had a contract with Three Sisters to purchase the leases from Phillips. The letter proposed that Three Sisters sell some of the leases to Langley for $9,000 per net barrel. Three Sisters rejected the proposal and maintained that they had no valid contract with Langley regarding the leases.

On March 15, 2000, Appellants filed suit in state court in Caddo Parish, Louisiana, seeking a declaratory judgment as to whether any contract existed between Three Sisters and Appellee

Langley. On May 18, 2000, Appellees removed that case to federal district court in Louisiana, based on a claim of diversity of citizenship. That same date, Appellees filed suit in federal district court in Arkansas. On March 29, 2001, the Louisiana federal court granted Appellees' motion to transfer the declaratory-judgment action to the Arkansas federal court.

About one month later, on April 23, 2001, Appellants took a voluntary nonsuit of their declaratory-judgment action, which had been transferred to the Arkansas federal court. The decision to nonsuit was based on Appellants' discovery that one of Langley's partners, Appellee Richard Hill, was a resident of Louisiana. Because there was no longer diversity of citizenship, Appellants filed a new declaratory-judgment action in Louisiana state court on April 24, 2001.

Appellees, once again, removed the Louisiana state-court case to federal court in Louisiana. Eventually, however, the Louisiana federal court concluded that jurisdiction was in state court, and it granted Appellants' motion to transfer the case back to the Louisiana state court. The Arkansas federal court also concluded that jurisdiction belonged in Louisiana state court, and it likewise granted Appellants' motion to dismiss Appellees' federal suit. One week later, Appellees filed the present suit in Union County, Arkansas. At that point, there were only two cases pending: (1) the declaratory-judgment action filed by Appellants on April 24, 2001, in Louisiana state court and (2) the civil complaint filed by Appellees on September 26, 2001, in the Union County Circuit Court.

On November 21, 2001, Appellants filed a motion to dismiss the Union County case or, alternatively, to stay that case until the Louisiana state case was resolved. Appellants urged that under principles of comity, the Arkansas court should allow the Louisiana court, which was the first to acquire jurisdiction over the parties and the subject matter, to conclude its proceedings first. The circuit court denied the motion on December 13, 2001. On February 8, 2002, Appellees filed a petition for an *ex parte* injunction in the circuit court, asking the court to restrain and enjoin Appellants from proceeding further in their suit in Louisiana. The cir-

cuit court granted the petition that same date, without a hearing, and issued a temporary restraining order. Appellants timely filed a notice of appeal from that order, and we granted a stay of the proceedings pending our resolution of this appeal.

Before we reach the merits of this case, we must first address Appellees' motion to dismiss this appeal. Appellees contend that an interlocutory appeal will not lie from the grant of a temporary restraining order issued pursuant to Ark. R. Civ. P. 65. Appellants argue that such an appeal is specifically authorized by Ark. R. App. P.—Civ. 2(a)(6), which provides that an appeal may be taken from "[a]n interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused." Appellees acknowledge this rule, but they contend that a temporary restraining order is not the equivalent of an injunction. Rather, they urge that a temporary restraining order is a lesser order that may ripen into an injunction following a hearing in the trial court. Thus, according to Appellees, there can be no appeal from a temporary restraining order issued under Rule 65 until the restrained party first exercises its right to apply for a hearing in the trial court. We are not persuaded by Appellees' arguments.

In the first place, we disagree that application for a hearing to dissolve a temporary restraining order is a prerequisite to appeal. Rule 2(a)(6) is clearly written in the alternative, providing for an interlocutory appeal from the grant of an injunction and also for an interlocutory appeal from an order refusing to dissolve an injunction. Obviously, the second alternative anticipates that application has been made in the trial court to set aside or dissolve the injunction, but the first alternative does not. Accordingly, the argument on this point lacks merit.

In the second place, this court's decisions have not drawn a distinction between temporary restraining orders and injunctions when accepting appeals. *See, e.g., Amalgamated Clothing v. Earle Indus., Inc.*, 318 Ark. 524, 886 S.W.2d 594 (1994); *American Trucking Ass'n v. Gray*, 280 Ark. 258, 657 S.W.2d 207 (1983); *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980); and *Boyd v. Dodge*, 217 Ark. 919, 234 S.W.2d 204 (1950). For

example, in *Gray*, 280 Ark. 258, 657 S.W.2d 207, this court concluded that the interlocutory order granting a temporary or preliminary injunction was appealable pursuant to Rule 2(a)(6), and it proceeded to apply the standard of review for the granting or denial of a "temporary *restraining* order." *Id.* at 260, 657 S.W.2d at 208 (emphasis added). Similarly, in *Boyd*, 217 Ark. 919, 234 S.W.2d 204, this court used the terms "temporary restraining order" and "injunction" interchangeably:

> [A] majority of the Justices are of the opinion that the petition filed herein should be treated as an appeal from the interlocutory order of the Chancellor granting a *temporary restraining order*. . . . Ark. Stats. 27-2102 provides that an appeal may be taken to the Supreme Court from an interlocutory order granting or refusing an *injunction*.

*Id.* at 922, 234 S.W.2d at 205-06 (emphasis added). These cases demonstrate that this court has not heretofore differentiated between temporary or preliminary injunctions or restraining orders for purposes of determining jurisdiction on appeal. Interestingly, Appellees do not even differentiate between the two; their motion is styled "Petition for Injunction," but the body of the motion asks the court to issue a "preliminary restraining order."

Finally, we conclude that Appellees' argument must be rejected based on the Reporter's Notes (as modified by this court) to Rule 65, which clearly reflect this court's intention to treat temporary restraining orders the same as preliminary injunctions:

> 1. Rule 65 marks a significant departure from [Federal Rule of Civil Procedure] 65. Whereas the latter makes a distinction between preliminary injunctions and temporary restraining orders, *this rule treats them equally* insofar as the procedures are concerned for obtaining either remedy. [Emphasis added.]

Based on the foregoing authorities, we conclude that we have jurisdiction of this interlocutory appeal, and we deny Appellees' motion to dismiss. We now turn to the issues on appeal.

Appellants argue that the trial court abused its discretion in granting the temporary restraining order because (1) the allegations and findings of irreparable harm are insufficient as a matter of

law, and (2) there is no finding at all regarding the likelihood that Appellees would succeed on the merits of their suit. Appellants also argue that the restraining order impermissibly infringes on the respect and deference due to courts of other jurisdictions.

We note at the outset that the issuance of a temporary restraining order is a matter addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal unless it is clearly erroneous. *Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). In determining whether to issue a preliminary injunction or temporary restraining order pursuant to Rule 65, the trial court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Id.*

Regarding the first necessary showing, this court has held: "Essential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." *Kreutzer*, 271 Ark. at 244, 607 S.W.2d 670, 671 (citing Ark. R. Civ. P. 65). "The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief." *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 302, 954 S.W.2d 221, 224 (1997).

Regarding the second thing that must be shown, this court has held: "Of course, in order to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial." *W.E. Long Co. v. Holsum Baking Co.*, 307 Ark. 345, 351, 820 S.W.2d 440, 443 (1991) (citing *Smith v. American Trucking Ass'n*, 300 Ark. 594, 781 S.W.2d 3 (1989)). The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. *Custom Microsystems*, 344 Ark. 536, 42 S.W.3d 453. Such a showing "is a benchmark for issuing a preliminary injunction." *Id.* at 542, 42 S.W.3d at 457-58.

The record in this case is devoid of evidence supporting a finding of irreparable harm or of a likelihood of success. First, the temporary restraining order itself contains no factual findings of irreparable harm to Appellees. The closest thing to a finding of

fact on this issue is the trial court's conclusion that it "is not in the best interest of the parties financially" to continue litigating this matter in multiple courts. This finding is insufficient. Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Kreutzer*, 271 Ark. 243, 607 S.W.2d 670. Obviously, financial harm is not irreparable, as it can be adequately compensated by money damages. Furthermore, financial concerns aside, the fact that "some inconvenience will be occasioned" by litigation in multiple courts is not sufficient reason to justify judicial restraint. *Standard Oil Co. of Louisiana v. Reddick*, 202 Ark. 393, 396, 150 S.W.2d 612, 614 (1941).

The only other mention of irreparable harm in the restraining order is as follows:

> Defendants are engaging in a race to the courthouse which may cause irreparable harm to Plaintiffs by forcing Plaintiffs to defend in a foreign court wherein:
>
> (a) the issue of personal jurisdiction has not been resolved;
>
> (b) all necessary parties are not before the court, and
>
> (c) all relief cannot be granted for all parties.

None of these claims of irreparable harm can be substantiated. In the first place, the issue of personal jurisdiction has been resolved by the Louisiana state court. The fact that Appellees have appealed that ruling does not make it an unresolved issue. Moreover, both the Arkansas and Louisiana federal courts came to the same conclusion — jurisdiction belongs in Louisiana state court. In the second place, the only "necessary" party that has not been included in the Louisiana case is Langley's father, J.C. Langley, who is a ward of Langley. Appellees do not explain how J.C. Langley is a necessary party to the action.[1] If, however, he is an investor-partner, like the other individual Appellees, then he certainly may be joined in the Louisiana litigation.

---

[1] In paragraph 13 of the complaint, J.C. Langley is listed as one of the persons to whom Jerry Langley offered the opportunity to purchase an interest in the oil leases. In paragraph 16, however, J.C. Langley is omitted from the list of investors who had entered into a written agreement with Jerry Langley to invest in the leases.

In the third place, the allegation that relief cannot be granted to all parties in Louisiana is not accurate. All of the claims filed by Appellees in the Union County court have been filed as counterclaims in the Louisiana state-court action. Appellees' assertion that the Louisiana court could not order a constructive trust on property located in Arkansas is a red herring. The bottom line is that this case comes down to a single issue: Whether a contract existed between Langley and Three Sisters to purchase the oil leases from Phillips Petroleum. This issue is squarely presented to the Louisiana court, which has authority to decide it. Undoubtedly, the Louisiana court has the authority to order Appellants to convey part of the leases to Appellees, should Appellees prevail, under the theory of specific performance. In *Reddick*, 202 Ark. 393, 150 S.W.2d 612, this court quoted with approval the following holding from the United States Supreme Court:

> Where the necessary parties are before a court of equity, *it is immaterial that the* res *of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal.* It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitae*, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam*.

*Id.* at 396, 150 S.W.2d at 614 (emphasis added) (quoting *Phelps v. McDonald*, 99 U.S. 298, 308 (1878) (citations omitted)). Because all the necessary parties are before the court in Louisiana, it is immaterial that the oil wells are located in Arkansas. Accordingly, we conclude that Appellees have failed to demonstrate that they would suffer irreparable harm if the restraining order was not granted.

Likewise, Appellees have also failed to demonstrate a reasonable probability that they would succeed in their suit. Appellants assert that there was an initial agreement between the parties to attempt to purchase the oil leases from Phillips. They initially agreed that they would split the leases 50-50, and that Langley's

company would be the record purchaser. However, that agreement was not acceptable to Phillips, as it wanted assurances that the purchaser would indemnify it for any environmental claims arising out of its ownership of the leases. Phillips did not believe that Langley had the financial strength or operations experience to stand behind such an indemnity obligation. As a result of Phillips's concerns, Three Sisters proposed an 85-15 split between the parties. According to Appellants, the exact terms of the proposal were never agreed upon, and Langley was not successful in obtaining financing to purchase his share of the leases. After repeated inquiries regarding his ability to secure financing, and even one attempt at assisting him in obtaining a loan, Langley finally told Three Sisters to "count me out." Thereafter, Three Sisters purchased the leases from Phillips and subsequently assigned them to Appellant Union Producing.

The facts as told by Appellees are quite different. They contend that a valid agreement existed between Langley and Three Sisters to purchase the oil leases 50-50. They claim that Three Sisters unilaterally altered the agreement to an 85-15 split. They claim further that Three Sisters never provided Langley with any documentation from Phillips regarding Phillips's alleged unwillingness to do business with him. They also claim that Langley was able to obtain financing, but that Three Sisters purchased the oil leases on its own behind his back. Given these two contradictory versions of what occurred between the parties, we cannot say that the record demonstrates a reasonable probability that Appellees will succeed on the merits of their suit.

Finally, we agree with Appellants that the restraining order issued in this case ignores common principles of comity between courts of sister states. "'Judicial comity' is the principle in accordance with which the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 16 AM. JUR. 2D *Conflict of Laws* § 16 (1998) (footnote omitted). The principle of comity requires that courts exercise the power to enjoin foreign suits sparingly. *See* 42 AM. JUR. 2D *Injunctions* § 195 (2000). This is particularly true where suit has already been brought in the foreign court. Generally, "[a] court

of one state will not enjoin the prosecution of an action in a second state when the court of the second state was the first to acquire jurisdiction of the parties and the right to adjudicate the controversy, in the absence of some peculiarly equitable ground for granting such relief." 42 AM. JUR. 2D *Injunctions* § 206 (2000) (footnote omitted). This general principle was recognized in *Pickett v. Ferguson*, 45 Ark. 177, 189 (1885), wherein this court held that restraining a party from proceeding in the courts of another state "is a matter of very great delicacy, almost inevitably leading to the distressing conflicts of jurisdiction." This court concluded that such restraint should only be imposed "where the foreign suit appears to be ill calculated to answer the ends of justice," such as where the court lacks jurisdiction over all of the parties or the subject matter of the case. *Id.* (citations omitted).

In *Pickett*, the subject of the litigation was title to property located in Arkansas. A suit was filed by the original landowner, Mrs. Pickett, in Tennessee. She later filed suit in Arkansas because she was not able to obtain service on one of the defendants in Tennessee, as he had since moved to Arkansas. The defendants asked the Arkansas court for an injunction preventing Mrs. Pickett from proceeding further in her Tennessee suit. The trial court granted the injunction and this court upheld it. The decisive factor supporting the injunction was not that the property was located in Arkansas, but that the Tennessee court did not have, and could not obtain, personal jurisdiction over an indispensable party. This court held:

> The fact that the real estate, which is the subject of controversy, was situate in Arkansas, was not an insuperable obstacle in the way of doing complete justice by the Tennessee court. But as a court of equity in such cases acts *in personam*, it must have jurisdiction over the parties in order to administer the cause. Ferguson, an indispensable party to the litigation, was absent.

*Id.* at 189-90. This holding demonstrates this court's respect for the courts of our sister states and its caution in upholding injunctions that preclude parties from maintaining and prosecuting suits in other states.

Following *Pickett*, this court demonstrated even more caution when reviewing an injunction prohibiting a resident of another state from proceeding with a suit in that other state. In *Greer v. Cook*, 88 Ark. 93, 113 S.W. 1009 (1908), this court refused to uphold an injunction prohibiting a creditor who lived in Missouri from proceeding with a suit in Missouri against a debtor who lived in Arkansas. This court concluded that the case turned on the right of the creditor to proceed with the suit in his home state. It was thus immaterial that suit had already been brought by the creditor in Arkansas. This court explained:

> The fact that an action was first instituted and was pending here when the new action was commenced in Missouri does not alter the case. Whether or not the bringing of a new action in a foreign jurisdiction operates as an abatement of the action here, we need not decide. The result turns upon the right of the creditor to bring his action in another State without being open to the charge of having fraudulently evaded the laws of this State; and *if he had the right, in the first instance, to sue in another State, the fact that he had already instituted suit here does not cut off that right.* The fact that the creditor instituted the suit in a foreign jurisdiction for the sole purpose of vexation and oppression does not authorize the interposition of a court of equity by injunction. The remedy, if any, is at law for the malicious abuse of process.

*Id.* at 96, 113 S.W. at 1010 (citation omitted) (emphasis added).

■ Here, unlike the facts in *Pickett*, the Louisiana state court has jurisdiction over all of the parties. In fact, the issue of jurisdiction has been repeatedly litigated, with the Louisiana state court and both the Arkansas and Louisiana federal courts ruling that jurisdiction belonged in Louisiana state court, due to the fact that Louisiana residents were on both sides of the suit. Although Appellees have appealed the most recent jurisdiction ruling by the Louisiana state court, it is not apparent that they will succeed on that issue. Moreover, the holding in *Cook* clearly demonstrates this court's historic reluctance to support an injunction restraining a resident of a sister state from proceeding with a suit already instituted in that state. In short, the circuit court's authority to issue injunctions of foreign suits should only be exercised in the rarest of circumstances. This is not such a rare circumstance.

 In sum, we conclude that the trial court abused its discretion in issuing the restraining order in this case. The Louisiana state court has jurisdiction over the parties and the subject matter of the dispute. There has been no showing of irreparable harm to Appellees that would justify an order restraining Appellants, residents of Louisiana, from proceeding with a suit filed in their home state, a suit that was filed first. Moreover, Appellees have failed to make the requisite showing that they would likely prevail on the merits of their suit. Under the circumstances, judicial comity must prevail. Accordingly, we reverse and remand with instruction to the trial court that the restraining order be dissolved, thus allowing Appellants to proceed with their suit in Louisiana.

Reversed and remanded.