AJ&K OPERATING COMPANY, Inc., *et al. v.* Grover SMITH, *et al.*

03-232                    140 S.W.3d 475

Supreme Court of Arkansas
Opinion delivered January 8, 2004

[Petition for rehearing denied February 19, 2004.]

*Chisenhall, Nestrud & Julian, P.A.*, by: *Charles R. Nestrud* and *Ann P. Faitz*, for appellants Kerr-McGee Corporation; Kerr-McGee North American Onshore Corp.; and Kerr-McGee Oil Industries, Inc.

*Gooding & Dodson*, by: *Robert Dodson*, for appellants Kerr-McGee Corp., Kerr-McGee Onshore Corp.; Kerr-McGee Oil Indus., Inc.; and Devon Energy Corp.

*Anderson, Murphy & Hopkins*, by: *Randy Murphy*, for appellants JAYKAY Oil Co., LLC; J.C. Langley Oil Company, by and through his Guardians, Jerry Langley and Janice Warwick; Needmore Oil Co.; Alpha Production, Inc.; Atlanta Production, Inc.; Pierce Land & Title Company.

*Heidleberg & Woodliff*, by: *Richard Edmondson*, for appellants JAYKAY Oil Co., LLC, and J.C. Langley Oil Company, by and through his Guardians, Jerry Langley and Janice Warwick.

*Dunn, Nutter, Morgan & Shaw*, by: *Wilford Dunn*, for appellants Chapman Energy, Inc.; CODA Energy, Inc.; Chapman Acquisition Corp.; Excepted Corp.; Schuler Drilling Co.

*Mitchell, Williams, Selig, Gates & Woodyard*, by: *Sherry Bartley*, for appellant Moore & Munger Marketing, Inc.

*Compton, Prewett, Thomas & Hickey*, by: *Floyd Thomas*, for appellant Cross Oil Refining & Marketing, Inc.

*Bridges, Young, Matthews & Drake*, by: *Stephen A. Matthews*, for appellant Sales Excavating, Inc.

*Shackleford, Phillips, Wieland & Ratcliff*, by: *Brian Ratcliff*, for appellants Lion Oil Refining Company and Monsanto Company.

*Smith Stag, L.L.C.*, by: *Stuart Smith* and *Michael G. Stag*; and *Boswell, Tucker & Brewster*, by: *Ted Boswell* and *Dennis Davis*, for appellees.

R OBERT L. BROWN, Justice. The appellants in this case, AJ&K Operating Co., Inc., et al. (Oil Companies), appeal from the circuit court's order denying their motion to modify a temporary restraining order which was entered against them. The Oil Companies sought permission from the court to complete the plugging of wells and closure of pits on the property of the landowner appellees (Landowners), who had leased their properties to the Oil Companies for oil production. The Oil Companies assert four points on appeal: (1) that there was no irreparable harm to support injunctive relief; (2) that the existence of concurrent jurisdiction before the Arkansas Oil and Gas Commission and a court of law does not authorize the injunction entered in this case; (3) that the public policy of the State demands that remediation take place under the direction of appropriate regulatory authorities; and (4) that the reason for granting the injunction, which was to preserve the Landowners' "cost of repair" damage claim, was based on misinterpretation of Arkansas law. We agree that the circuit court abused its discretion in concluding that there was irreparable harm to the Landowners and in refusing to modify the temporary restraining order. We reverse and remand.

On October 19, 1999, the Landowners filed a complaint in which they alleged that the Oil Companies, which leased the Landowners' land for the production of oil, caused contamination

and damage to that land. The Landowners specifically asserted eight claims for relief: (1) negligence/negligence per se; (2) nuisance; (3) continuing trespass to land; (4) breach of contract; (5) waste; (6) strict liability; (7) outrageous conduct; and (8) assault and battery. They sought monetary damages, punitive damages, a declaratory judgment, and an injunction enjoining the Oil Companies from entering onto or disturbing their land "under the guise of performing cleanup activities" without their consent "as to the duration, type and manner of activities intended to be performed[.]"

The following day, October 20, 1999, the circuit court issued a temporary restraining order which restrained the Oil Companies from remediating or otherwise disturbing the Landowners' land. The circuit court noted that prior to filing the instant action, the Landowners had previously sought relief in the federal district court which dismissed the matter for lack of subject-matter jurisdiction. The circuit court then said in its order:

> 4. Plaintiffs [Landowners] allege that after dismissal of the federal action and prior to the filing of this action, certain Defendants [Oil Companies] announced their intention to attempt to remediate Plaintiffs' property. Defendants refused to supply Plaintiffs with any information regarding the methods to be used or the proposed disposition of the waste.

> 5. According to Rule 65 of the Arkansas Rules of Civil Procedure, a temporary restraining order may issue where it appears that irreparable harm might otherwise result. The Court finds that Plaintiffs may be irreparably harmed if valuable evidence in this case is destroyed by the proposed remediation, and/or if any proposed remediation conducted is performed inadequately or improperly. Moreover, Plaintiffs allege that Defendants' mineral leases have expired and their equipment has been abandoned, and they do not have the right to access Plaintiffs' property, and thus said remediation would constitute a trespass.

A date for a hearing was then set by the court.

On October 26, 1999, the Landowners filed a motion for preliminary and permanent injunction and/or for protective order. In that motion, they alleged that because the Oil Companies had not conceded liability, there was valuable evidence that remained on their property. The Landowners asked for a protective order to enjoin the Oil Companies from entering the Landowners' land for any purpose that might disturb evidence, includ-

ing but not limited to equipment and/or contaminated soils. That same day, a hearing was held on the motion, at which time the parties agreed to a modification of the temporary restraining order.

On November 15, 1999, the Oil Companies answered the Landowners' complaint. They first asserted that the complaint failed to state a claim upon which relief could be granted. They then generally denied each of the counts set forth in the Landowners' complaint. In addition to other defenses claimed, the Oil Companies stated that the Landowners had a duty to mitigate their damages by taking, or permitting to be taken, remedial actions as may be reasonable under the circumstances.

On November 16, 1999, the circuit court, in accordance with the parties' agreement, issued a modified temporary restraining order and protective order. In that order, the court allowed some of the Oil Companies fourteen days within which to remove their surface equipment and tubing from the Landowners' properties and required them to give reasonable notice prior to the commencement of the removal so that the Landowners could have their experts present to observe the activity. The court also directed the Oil Companies to take all reasonable precautions "to avoid unnecessarily disturbing or disrupting alleged surface contamination during this process, but this shall not preclude [them] from taking all steps reasonably necessary when plugging a well and removing tubing." The court further directed the Oil Companies to submit their closure plan to the Landowners and to prepare any necessary documents for the Arkansas Oil and Gas Commission and any other appropriate agencies and to provide those documents as well to the Landowners. Finally, the court directed the Oil Companies, after removal of the surface equipment and tubing, to hold those items at a location accessible to the Landowners' experts for thirty days prior to "cleaning, refurbishing, reusing or otherwise disturbing said equipment."

On August 5, 2002, the Oil Companies moved for authority to complete plugging the wells and closure of the pits. The motion stated that in compliance with the circuit court's modification order dated November 15, 1999, and filed November 16, 1999, the Oil Companies completed the remediation on December 1, 1999, and had advised the Landowners' counsel that the equipment was being held for inspection by their experts. The motion added that counsel for the Landowners did not seek any inspection. The motion asked for an order lifting the restraining order on the basis that the Landowners had had over thirty-three months to

investigate and sample the well sites in question, and their experts had rendered reports on both soil and groundwater samples. The motion further stated that a trial date of October 28, 2002, had been set and added:

9.

These Defendants respectfully request an Order lifting the Restraining Order and specifically authorizing the Defendants to complete the plugging of the wells in accordance with Rule B-8 of the General Rules and Regulations promulgated by the Arkansas Oil and Gas Commission. Said Rules requires that the plugging of the wells be performed under the supervision of a duly authorized representative of the Oil and Gas Commission. See Rule B-7.

10.

Although these Defendants specifically deny any obligation to close the pits, these Defendants would voluntarily agree to perform this task. Therefore, these Defendants further move that as part of the well plugging procedure, this Court specifically authorize the Defendants to close the pits located on the Plaintiffs' property in conjunction with the well sites at issue in this litigation. . . . These Defendants would further move that any such pit closures be under the supervision of a representative of ADEQ and such other conditions as required by this Court.

A hearing was held on the motion and following the hearing, the circuit court denied the motion orally:

I find myself getting into a position of a counsel trying a case or mediating a case between these parties. The Court would agree with Mr. Smith [the Landowners' counsel] and not compel his client to accept this remediation of the damaged property. So your motion will be denied, Mr. Edmondson.

I see it as an effort to settle and reduce and it's commendable that your client would offer that, but I think Mr. Smith is correct in that we can't get into settlement, mediation, arbitration business and that's where I find I'm going. So the motion will be denied. I will leave that up to [the] parties to settle it as they deem appropriate, and if on further consideration if Plaintiff decided to do that, I would hope that that offer would remain open and that would serve to

reduce the issues for trial in this case. But as of right now, as a matter of law, I will not order it and will deny your motion.

An order was entered, denying the motion, on January 30, 2003.

The Oil Companies next filed a motion for reconsideration of the denial of their motion for authority to complete plugging and closure. In that motion, they requested that the circuit court reconsider their motion and cited a Mississippi Supreme Court decision, *Chevron U.S.A., Inc. v. Smith*, 844 So. 2d 1145 (Miss. 2002), in support of their position. On February 3, 2003, the circuit court denied the Oil Companies' motion to reconsider, and stated in pertinent part:

> 13. The temporary restraining order was entered in 1999 because irreparable harm would occur if Defendants were allowed to remediate the land. That condition continues to exist today. Remediation efforts could adversely affect the ability of the parties to evaluate and monitor the damages as well as the evidence to prove liability and damages or the lack thereof. Moreover, Defendants do not have a right under the lease to enter the land and Plaintiffs object to their entry. Lastly, Plaintiffs have demonstrated a substantial likelihood of success on the merits of this issue. Pursuant to Rule 65, Arkansas Rules of Civil Procedure, the temporary restraining order should remain in effect.

The Oil Companies now bring this interlocutory appeal from both the January 30, 2003 order and the February 3, 2003 order pursuant to Ark. R. App. P. — Civ. 2(a)(6).

As an initial matter, the Landowners urge that this interlocutory appeal is not cognizable under our appellate rules. We disagree. By the express language of·the circuit court in its February 3, 2003 order, the court refused to modify the TRO. Such an interlocutory order is specifically appealable under Ark. R. App. P. — Civ. 2(a)(6). *See also Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002) (holding that an interlocutory appeal from a temporary restraining order is permissible under this court's rules). The Landowners' contention has no merit.

The Oil Companies first contend in their appeal that the circuit court erred in concluding there was irreparable harm to support the continuation of the TRO. They assert that continued

protection of the Landowners' land, which had already been tested for contamination, cannot be the basis for a conclusion that irreparable harm will result. They further contend that no injunction was required to avoid a trespass, even though their leases to the lands had expired, as this court has previously held that an implied condition of an oil-and-gas lease is the duty to restore the surface to the same condition as before drilling. *See Bonds v. Sanchez-O'Brien Oil & Gas Co.*, 289 Ark. 582, 715 S.W.2d 444 (1986). The Oil Companies also maintain that by enjoining their remediation efforts, the circuit court has endorsed the Landowners' failure to mitigate damages. The Landowners respond that the circuit court was correct in entering the injunction, because the Oil Companies had no legal right to enter the land and because valuable evidence would be destroyed if they were allowed to attempt remediation.

██ In *Three Sisters Petroleum, Inc. v. Langley, supra*, this court set out its standard of review for the issuance of a temporary restraining order:

> We note at the outset that the issuance of a temporary restraining order is a matter addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal unless it is clearly erroneous. *Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). In determining whether to issue a preliminary injunction or temporary restraining order pursuant to Rule 65, the trial court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Id.*

> Regarding the first necessary showing, this court has held: "Essential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." *Kreutzer*, 271 Ark. at 244, 607 S.W.2d at 671 (citing Ark. R. Civ. P. 65). "The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief." *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 302, 954 S.W.2d 221, 224 (1997).

348 Ark. at 175, 72 S.W.3d at 100-01.

■ We take this opportunity, as an initial matter, to clarify that the standard of review for a temporary restraining order or preliminary injunction is whether the circuit court abused its discretion. *See Custom Microsystems, Inc. v. Blake, supra.* The standard of review is the same for the two essential components of a TRO or preliminary injunction: irreparable harm, and likelihood of success on the merits. *See* David Newbern & John J. Watkins, *Civil Procedure* § 29-2, at 437 (3d ed. 2002). Any suggestion in our caselaw that a conclusion by the circuit court that irreparable harm and likelihood of success on the merits are factual determinations, subject to a clearly erroneous standard, is incorrect. There may, of course, be factual findings by a circuit court that lead to conclusions of irreparable harm and likelihood of success on the merits. *See, e.g., Amalgamated Clothing & Textile Workers Int'l Union v. Earle Indus., Inc.*, 318 Ark. 524, 886 S.W.2d 594 (1994). But a conclusion that irreparable harm will result is subject to review under an abuse-of-discretion standard.

■ In the instant case, the Oil Companies only claim that the Landowners failed to demonstrate the necessary irreparable harm to support the TRO. This court has held that harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *See, e.g., Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980). In the case at hand, at the hearing on the temporary restraining order held October 26, 1999, the circuit court noted for the record that the court had met with counsel in chambers and an agreement had been struck to resolve the issues which would normally be addressed by such a hearing:

> . . . The basic agreement, and certainly an order will be entered to this effect, and reduced to writing, approved by all parties involved and that is that the temporary restraining order will be modified to allow defendants to remove surface equipment and tubing on the wells in issue, that they would have a two-week period of time to do so, that plaintiffs would then have thirty days to test and examine the equipment that has been removed for any evidence of contamination, that there will be no disturbance of the soil other than that normally attributable to the necessary movement of equipment on the property, in essence, no digging or burying or shoveling in any manner. This is out of concern that the basis of this lawsuit deals with allegations of contamination, the extent of which is contested

and the cost for a remediation of which is also contested, and those issues will be left for later development. Defendants are required to present, pursuant to Arkansas Oil & Gas Regulations, a site closure plan that will be done and defendants will present that to plaintiffs for their review. The site closure plan will be modified as I've indicated with, right now, the only site closure work being the removal of the surface equipment tanks pumping units, that sort and the tubing, and leave the clean up of the site for later issue. Plaintiffs will have the opportunity to review that site closure plan and comment on it by appropriate motion if necessary. The Oil & Gas Commission needs to understand that the matter will not be completely cleaned up pursuant to that site closure plan, simply because of the nature of this lawsuit. In essence, this Court will modify that site closure plan of the Oil & Gas Commission. Plaintiffs will have the opportunity to have representatives on site when the equipment is removed, representatives of their choosing and defendant shall provide reasonable notice of the time and date for the planned removal of the equipment. I also believe that the defendants will prepare any necessary Oil & Gas Commission documents related to the site closure and furnish those to the plaintiffs before, as well as after the work is done. There were reports of presence of unidentified third parties on the property as late as Friday, having some contact with the equipment. That is a concern to the Court, as that would be in violation of the temporary restraining order. It is in the best interest of all parties to have that surface equipment removed as soon as possible and that is the purpose of this hearing. . . .

In, short, the circuit court concluded that some modification of the TRO could transpire subject to compliance with relevant regulatory requirements and inspection by the Landowners' experts.

More than two years later, the circuit court's order of February 3, 2003, refused to modify the TRO and again stated that the restraining order needed to be continued. The court said this was so because remediation efforts could adversely affect the ability of the parties to evaluate and monitor damages as well as other evidence necessary for the Landowners to prove damages and, thus, irreparable harm would occur.

We are convinced that the record fails to support a conclusion that irreparable harm could occur due to remediation efforts, as that term has been defined by this court. Four years ago, the Landowners filed suit for damages for contamination they alleged

was caused by the Oil Companies' actions on their land. In order for there to be irreparable harm sufficient to support a temporary restraining order, the harm must be such that it cannot be adequately addressed by money damages or in a court of law. *See Kreutzer v. Clark, supra.* The Landowners argued below, and now on appeal, that were the Oil Companies permitted to remediate, valuable evidence could be destroyed due to cover-ups by the Oil Companies and even more damage to the property might occur. This, they claim, would make proving money damages more difficult.

This court, however, is unable to find any caselaw where an injunction was issued *prohibiting* remediation by contaminators under comparable circumstances. Instead, the more typical scenario is for the circuit courts to mandate that contaminators take steps to clean-up pollution and remediate the land. Moreover, we are not impressed by the Landowners' claims that evidence might be destroyed. The Landowners have had in excess of four years to gather evidence necessary for a trial on any damage perpetrated against their land. In the instant case, the net effect of the circuit court's refusal to modify its TRO is to allow possible contamination to continue unabated and perhaps even worsen.

There is also the point that the Landowners have prayed for money damages for contamination to their land caused by the Oil Companies. A claim for money damages due to contamination flies in the face of any contention that no adequate remedy at law exists and that irreparable harm will result from remediation. With regard to destruction of evidence, we again emphasize that four years is ample time to collect relevant samples. Should specific coverups be feared, it occurs to this court that added safeguards could be put into place by the circuit court such as expert review and a requirement that remediation take place under the auspices of relevant state agencies.

We hold that the contention in this case that remediation could destroy evidence for a trial on damages does not constitute irreparable harm. Although remediation efforts may ultimately affect the amount of damages awarded to the Landowners on their claims, those same remediation efforts could just as well benefit the Landowners by improving the state of their lands. Nor is trespass a sufficient demonstration of irreparable harm. An act of trespass, such as feared here, can be adequately compensated by money damages or otherwise redressed in a court of law.

■ We reverse the circuit court's refusal to modify its TRO and direct that the TRO be modified to permit the Oil Companies to clean up and remediate the land under such reasonable guidelines as the court may set. We note, in this regard, that various state agencies, including but not limited to the Arkansas Oil and Gas Commission, the Arkansas Department of Environmental Quality, and the Arkansas Health Department have a direct interest in assuring that remediation of contaminated soil is performed in a correct and efficient manner. The circuit court may determine that those agencies should supervise any remediation efforts by the Oil Companies. As already mentioned in this opinion, the circuit court, when it modified its TRO on October 26, 1999, specifically referred to the involvement of the Arkansas Oil and Gas Commission in connection with the Oil Companies' removal of surface equipment and tubing from the wells.

Reversed and remanded.

DICKEY, C.J., not participating.