MANILA SCHOOL DISTRICT NO. 15 *v*. Charolette WAGNER

03-755 148 S.W.3d 244

Supreme Court of Arkansas
Opinion delivered February 19, 2004

*W. Paul Blume*; and *Gibson Law Firm*, by: *Mike Gibson*, for appellants.

*W. Hunter Williams, Jr.*, for appellee.

DONALD L. CORBIN, Justice. This is an interlocutory appeal from an order of the Mississippi County Circuit Court granting a preliminary injunction prohibiting Appellant Manila School District No. 15 (the District) from hiring a new school superintendent. The injunction was issued by the trial court on the motion of Appellee Charolette Wagner, who has filed a wrongful-termination suit against the District and its school board, as well as the board's current and former members. For reversal, the District argues that the trial court erred in finding (1) that Appellee would suffer

irreparable harm if the injunction was not issued, and (2) that there was a substantial likelihood that Appellee would succeed on the merits of her suit. The District also argues that the trial judge was biased against it in issuing the injunction. This interlocutory appeal was certified to us from the Arkansas Court of Appeals, pursuant to Ark. Sup. Ct. R. 1-2(d). We reverse.

The facts as alleged in the complaint are as follows. In December 2000, school superintendent Roland Wells announced that he was retiring. Appellee was subsequently hired by the District to replace Wells. At the time of her hiring, Appellee was not certified by the Arkansas Department of Education as a superintendent. As a condition of her hiring, the District required Appellee to take the necessary college courses to obtain her certification.

A written contract was entered into between the parties on May 14, 2001, which provided for Appellee's employment as superintendent for the period of July 1, 2001, to June 30, 2002. The contract provided for an annual salary of $64,000.00. The contract also incorporated the requirement that Appellee make satisfactory progress toward obtaining superintendent certification and that she provide documentation denoting her progress. An addendum was added to Appellee's contract on February 18, 2002, increasing her annual salary to $65,333.30. Appellee's contract was renewed in a contract entered on May 3, 2002, which provided for her employment as superintendent from July 1, 2002, through June 30 2003, at an annual salary of $65,333.30.

Appellee alleged in her complaint that she obtained her superintendent certification prior to the end of the 2003 school year. Notwithstanding, on January 13, 2003, the majority of the District's school board voted not to renew her contract for the 2003-2004 school year. As a result of the board's decision, Appellee filed suit against the District and its board for wrongful termination, alleging the theories of promissory estoppel and detrimental reliance. She claimed that she had relied on oral promises made by some of the board members that if she completed her certification, she could continue as superintendent, with an increased salary and benefits.

In her complaint, Appellee sought an *ex parte* restraining order, enjoining the District from hiring a replacement superintendent until a full hearing could be conducted by the trial court. She also requested a second, permanent injunction requiring the

District to continue her employment as superintendent for another contract period at an increased salary and benefits. Alternatively, Appellee requested that she be awarded money damages for the loss of her salary and benefits, plus reimbursement for the expenses she had incurred in obtaining her superintendent certification.

The same date that Appellee's complaint was filed, March 7, 2003, the trial court entered an *ex parte* order enjoining the District from hiring a new superintendent until a hearing could be held. The order reflected the trial court's conclusion that "irreparable harm and damage will result" to Appellee unless the injunction was granted immediately.

Before a hearing could be held on the injunction, Appellee filed an amended complaint, adding a claim under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 to -108 (Supp. 2003). Specifically, she asserted that the District had discriminated against her because of her gender. The crux of her claim was that her predecessor had been a male who had been paid more than she had. She also based her claim on comments from a school board member, taken in a deposition after this litigation began, in which he indicated that it might be better for the superintendent to be a man. Appellee also alleged that the District had retaliated against her, in violation of her civil rights, because she had filed this lawsuit. As evidence of retaliation, Appellee alleged that two board members had indicated in their depositions that they could not support her as superintendent because she had proceeded with this lawsuit. As with the original complaint, Appellee sought relief in the form of an injunction requiring the District to continue her employment as superintendent for another contract period, with an increase in salary and benefits, and, alternatively, money damages for the loss of salary and benefits, plus expenses she incurred in obtaining her superintendent certification.

The trial court held a hearing on June 2, 2003, to determine whether to extend the *ex parte* injunction. Following testimony and arguments of counsel, the trial court entered an order continuing the injunction until the merits of Appellee's lawsuit could be resolved. The order reflected that Appellee had "established a substantial likelihood of success" on the merits of her suit, and that she had "established irreparable harm." The order specifically enjoined the District from hiring anyone to replace Appellee as superintendent. The order also provided that, aside from advertising for the position and interviewing prospective candidates, the

District could take no action that would in any way undermine Appellee's authority as superintendent or disparage her in the performance of her duties. This interlocutory appeal followed.

 We note at the outset that the issuance of a preliminary injunction is a matter addressed to the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *AJ & K Operating Co., Inc. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004); *Custom Microsystems, Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). In determining whether to issue a preliminary injunction, two factors must be considered: (1) whether irreparable harm will result in the absence of an injunction, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Id.* Of these two factors, this court has held that irreparable harm is "the touchstone of injunctive relief." *United Food and Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 353 Ark. 902, 906, 120 S.W.3d 89, 92 (2003) (citing *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997) (holding that the prospect of irreparable harm is the foundation of the power to issue injunctive relief)). Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *AJ & K Operating Co.*, 355 Ark. 510, 140 S.W.3d 475; *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002); *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980).

The District argues that the trial court was wrong in concluding that Appellee would be irreparably harmed if the injunction was not issued. The District asserts that there is no irreparable harm in this case, because the loss of a job is entirely compensable by money damages. It relies on this court's holding in *Kreutzer*, 271 Ark. 243, 607 S.W.2d 670, as well as the holdings of the Eighth Circuit Court of Appeals in *Minnesota Ass'n of Nurse Anesthetists v. Unity Hospital*, 59 F.3d 80 (8th Cir. 1995), and *O'Connor v. Peru State College*, 728 F.2d 1001 (8th Cir. 1984). All of these cases involved employees seeking preliminary injunctions pending the outcome of their suits against their employers.

In *Kreutzer*, the appellant, a doctor employed by the Boone County Hospital, filed a complaint against the hospital alleging illegal termination of his contract and seeking to temporarily enjoin the hospital's board from discharging him until the merits of his claim could be determined. He alleged that unless the board was temporarily enjoined, his professional reputation, future em-

ployment opportunities, and ability to care for his patients would be irreparably harmed. The trial court denied injunctive relief. On appeal, the appellant argued that irreparable harm was demonstrated from the loss of his salary and the possibility that he might be forced to move to another community to find suitable employment. This court found his arguments to be unavailing:

> We could not more forcefully disagree. *These arguments are available anytime an employment contract is terminated.* The chancellor need not indulge [in] speculation about appellant's future employment opportunities in deciding the legal question here. *No ground is lost by denial of the interlocutory order which cannot be recouped in a court of law by a favorable judgment and an award of money damages.*

Id. at 245, 607 S.W.2d at 671 (emphasis added).

In *O'Connor*, 728 F.2d 1001, the plaintiff was a physical-education instructor and women's basketball coach for Peru State College. When she was informed that her contract would not be renewed, she filed suit against the college, alleging, among other things, gender discrimination. She sought a preliminary injunction continuing her employment with the school. The district court denied the injunction, and the appellate court affirmed on the basis that the plaintiff had not demonstrated irreparable harm:

> Although O'Connor may be harmed by the termination of employment, it is clear that the harm is not necessarily irreparable and that it can be compensated for by money damages. Moreover, an outright grant of preliminary relief in employee discharge cases defeats the employer's prerogative of discharge. A preliminary injunction could put off the discharge of a potentially incompetent employee for many months. This is not to say that preliminary relief should never be granted in an employment discharge case. Rather, we merely note that in the present case the circumstances of discharge demonstrate that the balance of equities lies with the employer[.]

*Id.* at 1003. This same reasoning was expressed again by the Eighth Circuit in *Minnesota Ass'n of Nurse Anesthetists*, 59 F.3d 80.

There, the plaintiffs were certified registered nurse anesthetists who were terminated or threatened to be terminated by their hospital employers, allegedly because they had disclosed to their employers' auditors that certain doctor anesthetists had engaged in

fraudulent billing for their services. They filed suit against their employers and requested injunctive relief restraining the defendants from taking adverse action against them or anyone who might come forward with information to support their cause. The district court granted the injunction on the basis that the plaintiffs had demonstrated irreparable harm under the Minnesota "whistleblower" statute. *Id.* at 81. The district court also held that the plaintiffs had demonstrated a likelihood of success on the merits of their suit. The appellate court reversed. Regarding the district court's ruling on irreparable harm, the court explained that "while termination of employment harms the employee, the harm is not necessarily irreparable and can be compensated for by money damages." *Id.* at 83 (citing *O'Connor,* 728 F.2d 1001). The court then held: "The loss of a job is quintessentially reparable by money damages." *Id.*

The facts of this case present a situation comparable to those presented in the foregoing cases. Appellee filed suit against the District for wrongful termination and violation of her civil rights. As relief, she requested that the District be ordered to continue her employment as superintendent for another contract period, with an increase in salary and benefits. Alternatively, however, she requested that she be awarded money damages for lost salary and the reasonable value of lost benefits, plus her expenses for obtaining her superintendent certification. Given this alternative relief, we are hard pressed to conclude that any harm to Appellee cannot be adequately compensated by money damages. *See AJ & K Operating Co.,* 355 Ark. 510, 140 S.W.3d 475 (holding that a claim for money damages flies in the face of a contention that no adequate remedy at law exists and that irreparable harm will result); *Three Sisters Petroleum,* 348 Ark. 167, 72 S.W.3d 95 (holding that financial harm is not irreparable, as it can be adequately compensated by money damages).

The harm alleged by Appellee that would result from her not being kept on as superintendent is that caused by the loss of her job and, correspondingly, the loss of her salary; the possibility that she may have to relocate to another community to obtain similar employment; and the potential damage to her reputation. This is the same type of harm that was alleged in *Kreutzer,* 271 Ark. 243, 607 S.W.2d 670, wherein this court held that such harm is present in virtually every employment-termination case, and it can be recouped in a court of law by a favorable judgment and an award of money damages. We agree

with the Eighth Circuit that the loss of a job is "quintessentially" reparable by money damages. *Minnesota Ass'n of Nurse Anesthetists*, 59 F.3d at 83.

■ Based on the foregoing, we hold that the trial court abused its discretion in concluding that Appellee had established that irreparable harm would occur in the absence of an injunction. It is therefore not necessary to review the trial court's conclusion regarding the likelihood that Appellee would succeed on the merits of her suit. *See United Food and Commercial Workers Union*, 353 Ark. 902, 120 S.W.3d 89; *Smith v. American Trucking Ass'n, Inc.*, 300 Ark. 594, 781 S.W.2d 3 (1989) (holding that a party seeking a preliminary injunction must demonstrate *both* irreparable harm and a likelihood of success on the merits of the suit). We thus reverse and remand to the trial court with instruction to dissolve the preliminary injunction.