Dr. Gary AXLEY and the Church of Natural Healing and the
Southern College of Naturopathy *v.* Lu HARDIN, as Director of
the Arkansas Department of Higher Education and the Arkansas
Higher Education Coordinating Board, Jointly, Individually, and
Severally, and in Their Official Capacities as Director and
Members of the Board

02-1275 110 S.W.3d 766

Supreme Court of Arkansas
Opinion delivered June 12, 2003

[Petition for rehearing denied September 4, 2003.]

530

*Law Offices of Treeca J. Dyer, P.A.*, for appellant.

*Mike Bebee*, Att'y Gen., by: *Sherri L. Robinson*, Ass't Att'y Gen., for appellees.

TOM GLAZE, Justice. This appeal involves a petition for writ of mandamus, sought by the Church of Natural Healing ("Church"), its President, Dr. Gary Axley, and the Southern College of Naturopathy ("the College"). An understanding of the issues involved in this case requires a discussion of the history and background of the parties involved. The appellant, Dr. Axley, as mentioned above, is the President of the Church of Natural Healing, which was incorporated in 1998. The Church and Axley formed the Southern College of Naturopathy[1] to serve as the Church's educational arm. According to Axley, courses taught at the College train students to "perform the religious functions of the Church, and specifically, the functions of natural healing."

---

[1] "Naturopathy" is defined as "system of therapy that relies on natural remedies, such as sunlight supplemented with diet and massage, to treat illness." *American Heritage College Dictionary* 909 (3d ed. 1997).

The appellee in this case is the Arkansas, Department of Higher Education ("the Department"), which is statutorily charged with certifying postsecondary educational institutions. Ark. Code Ann. § 6-61-301 (Repl. 1996) governs the incorporation of postsecondary educational institutions, and that statute provides that the Department "shall be empowered to establish the criteria required for certification and to promulgate rules and regulations for the purpose of carrying out the provisions of this chapter and shall be charged with the final responsibility for decisions as required by the chapter." § 6-61-301(b). With respect to certification, the statute requires any postsecondary educational institution in Arkansas "desiring to offer programs leading to a degree which is customarily granted by colleges or universities . . . to obtain certification to grant such [a] degree" from the Department. § 6-61-301(a)(1)(C).

There is an exception to the certification requirement, however. Under the Department's "Rules and Regulations for Institutional and Program Certification in Arkansas" ("the Rules"), Rule 8 provides that any institution desiring to offer both religious programs and college-credit courses or degree programs recognized in the academic marketplace must obtain Arkansas Higher Education Coordinating Board certification, but the Board does not require certification under the following conditions: 1) the predominant purposes of the courses and programs are religious in nature, transmit the theology of the religious group, and train individuals to perform the religious functions of the group; and 2) the limited purposes of the courses or degree programs are clearly identified so that both the recipients of the training and others evaluating the training are notified that the courses and programs are not designed for use in the academic marketplace. Rule 8 also provides that the Director of the Department will certify that an institution meets the requirements for an exemption under § 6-61-301; however, the Board shall make the final determination on any exemption, should a question arise.

In June of 1997, Axley and the College contacted the Department, inquiring about the procedures for requesting a Rule 8 exemption from certification. Julie Cabe, the Associate Director of the Department, wrote to Axley in October of 1997 and enclosed a copy of the Rules; Cabe also asked Axley to send her a course catalog and curriculum. In January of 1998, Cabe again

spoke with Axley, who informed her that he had gotten incorporation papers as a religious institution. Cabe reiterated that the Department would need to see a course catalog and curriculum.

· On February 2, 1998, the Department received an envelope from the College that contained a catalog and a copy of the Church of Natural Healing's incorporation papers. The catalog was entitled "The Southern College of Naturopathy — College Degree Programs in Natural Health and Naturopathy," with a copyright date of 1997. The catalog also stated that the College offered a Bachelor of Science in Natural Health, a Master of Science in Natural Health, and a Doctor of Naturopathy. The incorporation certificate reflected that "The Church of Natural Healing" was incorporated on January 20, 1998, by the Secretary of State.

On March 17, 1998, after receiving word from the Governor's Office that Axley was attempting to check on the status of his exemption application, Cabe wrote Axley another letter that stated the Department's belief that the College needed to become certified in accordance with the Board's rules and regulations. The reason the College needed to be certified, according to Cabe's letter, was that the College offered degree titles that were customarily granted by colleges and universities. Stated another way, Cabe's letter indicated, Rule 8 provided that any institution that desired to offer both religious programs and degree programs recognized in the academic marketplace required certification. Cabe also pointed out that any degree title approved by the Coordinating Board — such as the Bachelor of Science and Master of Science degrees offered by the College — could not be used by institutions desiring a Rule 8 exemption.

Axley's next contact with the Department was with Patsy Strode, who became the Department's Coordinator of Academic Certification in December of 1999. In February of 2000, Strode developed an application form for those institutions wishing to receive a Rule 8 religious exemption. Strode became aware of the history between the Department and Axley in late 2000, when sources inquired about the College, asking if the College was authorized by the State to grant doctoral degrees. Strode wrote a letter to Axley on December 12, 2000, stating that the College should apply for certification; Strode referenced Cabe's 1998 correspondence which related that the College needed to be certified.

In response, Axley sent a letter stating that the College was a branch of the Church of Natural Healing, and asking for an assurance in writing that the Department would notify future inquirers that Axley claimed a religious exemption.

On December 19, 2000, Axley called the Department to inform it that the Doctor of Naturopathy ("ND") was the only degree currently being offered at the College. The Department responded with a letter dated December 20, 2000, attempting to confirm that the ND was the only program, and again requesting a current catalog to assist the Department in the evaluation of the College. A second request for a catalog was faxed on January 3, 2001. On January 5, 2001, an attorney wrote the Department on Axley's behalf, claiming that, in 1998, a Department supervisor verbally confirmed that the College's program was exempt from certification requirements.

In early February of 2001, the Department received further correspondence from Axley's attorney, acknowledging that his office had received information on how to submit an application for an exemption, but claiming that Axley had told his attorney that an exemption had already been granted several years ago. Strode disputed this claim, sending a February 16, 2001, letter to Axley's attorney and informing him that Axley had never officially responded to the March 17, 1998, letter from Julie Cabe. Strode contended that neither Axley nor the College had ever provided the information requested to show that the institution qualified for a Rule 8 exemption, and stated that neither she nor anyone at the Department had ever told Axley that he or the College qualified for such an exemption.

On July 31, 2001, in response to a query from State Senator Ed Wilkinson, the Attorney General's office issued Opinion No. 2001-163, opining that the Rule 8 exemption might pose a constitutional problem under the Establishment Clause, because the exemption conferred a benefit on religious institutions that similarly-situated non-religious organizations could not receive. As a result, in order to avoid any potential challenges to the constitutionality of the Rule, the Department put the exemption process on hold in order to evaluate the Attorney General's opinion.

In October of 2001, Axley's attorney sent Department Director Lu Hardin a letter, demanding that the Department provide Axley "with the opportunity to complete a standardized application form for the Rule 8 exemption, to have the opportunity for a hearing before the agency on the application, and to have an appeal right to the Board (and beyond, to the Circuit Court), all in accordance with the provisions of the Arkansas Administrative Procedures Act." Director Hardin sent a letter in response, informing Axley of the Attorney General's opinion, and stating that, after receiving that opinion, the Department "ceased granting Rule 8 exemptions for religious institutions pending a recommendation" for a rules change; therefore, according to Hardin, Axley's request that the College "be allowed to complete a standardized application form for the Rule 8 exemption cannot be accommodated."

As we have already mentioned, the foregoing chronology of events led Axley to file a petition for writ of mandamus in the Circuit Court of Scott County on March 22, 2002. Axley alleged that he had requested a hearing on Rule 8 eligibility, and that the Department had refused to accept his application or to schedule a hearing before the Board. The Department responded, denying that Axley had met the requirements for a writ of mandamus, and noting that Axley had never provided information that demonstrated the College was entitled to a religious exemption. Following a hearing, the circuit court agreed with the Department that Axley did not present sufficient evidence to establish a clear and certain right to the relief sought and the absence of another adequate remedy. The court also found that the Department was in the process of reviewing its rules and regulations, and should be allowed a reasonable time to complete the evaluation. Therefore, the court denied Axley's petition for writ of mandamus, and this appeal followed.

■■■ The purpose of the writ of mandamus is to enforce an established right or to enforce the performance of duty. *Manila Sch. Dist. #15 v. White*, 338 Ark. 195, 992 S.W.2d 125 (1999). This court has often held that mandamus is an appropriate remedy when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion or official judgment. *Rothbaum v. Arkansas Local Police & Fire Ret. Sys.*, 346 Ark. 171, 55 S.W.3d 760 (2001); *Sargent v. Foster*, 332 Ark. 608, 966 S.W.2d 263 (1998). A writ of mandamus is

appropriate if two factors are established: 1) the duty to be compelled is ministerial and not discretionary; and 2) the petitioner has shown a clear and certain right to the relief sought, and the absence of any other adequate remedy. *Hanley v. Arkansas St. Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998). To be "adequate," the alternative remedy must be "plain and complete and as practical and efficient to the ends of justice and its proper administration as the remedy invoked." *Id.* (citing *State v. Grimmett*, 292 Ark. 523, 731 S.W.2d 207 (1987)). This court will reverse a trial court's ruling on a petition for writ of mandamus only if there has been an abuse of discretion. *Id.; Hicks v. Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993).

█ The issue presented by this appeal is whether Axley demonstrated a clear and certain right to the relief sought, and the absence of any other adequate remedy. The relief sought was an application form for a Rule 8 exemption and a hearing on that application, to which Axley asserted he was entitled under the Arkansas Administrative Procedures Act, Ark. Code Ann. § 25-15-201 *et seq.* (Repl. 2002) ("APA"). However, it is noteworthy that, under Rule 8, there is no requirement that any "application," such as the one that Axley demanded, be offered or completed. Rather, the application form was developed by Patsy Strode as a means to facilitate the process for those seeking a religious exemption. Nothing in Rule 8 dictates that an actual application form be sent out, and certainly nothing in the rule mandates a hearing on that application. Axley has not demonstrated a clear and certain right to the relief sought.

In addition, in order to obtain a writ of mandamus, a petitioner must demonstrate that he has no other adequate remedy; it is apparent that Axley has failed to meet this requirement as well. Axley asserts that his case has not been "adjudicated" by the Department, as is required by the APA, because the letters issued by the Department "summarily denying [him] the opportunity to apply for a Rule 8 exemption are, effectively, the final disposition of the matter" for him.

However, under Ark. Code Ann. § 25-15-207 (Repl. 2002), of the APA, Axley could have sought a declaratory judgment in order to determine the applicability of the Department's rules to him. That statute provides, in relevant part, as follows:

(a) The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his person, business, or property.

\* \* \*

(d) A declaratory judgment may be rendered *whether or not the plaintiff has requested the agency to pass upon the* validity or *applicability of the rule in question.*

(Emphasis added.)

 In *McEuen Burial Ass'n v. Arkansas Burial Ass'n Board*, 298 Ark. 572, 769 S.W.2d 415 (1989), this court held that certain burial associations were entitled to bring a declaratory judgment action in circuit court to determine the validity of new rules promulgated by the Burial Association Board. Citing § 25-15-207(a), the *McEuen* court held that the words of the statute "clearly establish that it is not necessary that the injury already have occurred or that a person show he was affected by it in order to obtain a declaratory judgment." *McEuen*, 298 Ark. at 575. Either the "threatened application of a rule or the threat of injury" would justify a party's seeking to have the regulations reviewed. *Id.* In sum, the *McEuen* court held, a declaratory judgment action may be maintained even if the plaintiff has not requested the agency to rule upon the validity of the rule or regulation in question. *Id.* Here, Axley could have brought such a declaratory action to determine whether or not Rule 8 should apply to him; thus, he had an adequate alternative remedy, and was not entitled to a writ of mandamus.

On this issue, we hasten to distinguish those cases in which this court has held that one must exhaust one's administrative remedies before being permitted to pursue a declaratory judgment. *See, e.g., Regional Health Care Facilities, Inc. v. Rose Care, Inc.*, 322 Ark. 780, 912 S.W.2d 406 (1995) (holding that one must seek administrative relief before resorting to declaratory procedures, "wherever administrative relief is afforded and this requirement is not one merely requiring the initiation of administrative procedure, but the administrative procedure must be pursued to its final conclusion before resort may be had to the court for declaratory relief"); *see also Ford v. Arkansas Game & Fish Comm'n*, 335

Ark. 245, 979 S.W.2d 897 (1998) (where the Game and Fish Commission had already exercised its jurisdiction over the matter by notifying Ford that it was revoking his hunting and fishing licenses, and Ford requested an administrative hearing, Ford was not entitled to file a declaratory judgment action before he exhausted his administrative remedies before the Commission).

■ Here, however, the issue is not whether the Department improperly applied Rule 8, but rather whether the Department has any jurisdiction to apply its rules to Axley. In other words, when the Department sent a letter to Axley in 1998, telling him that he needed to certify his College, the Department was attempting to exercise jurisdiction over him by causing him to comply with the rules regarding the certification process. At that time, Axley could have filed an action for declaratory relief, pursuant to § 25-15-207, alleging that the Department's threatened application of its certification rules to him were threatening to cause injury to him, the Church, and the College.

■ However, Axley has yet to even attempt to avail himself of relief before the Department under its administrative procedures. As the Department points out, it was Axley's responsibility to pursue this matter to completion through the Arkansas Higher Education Coordinating Board, which is charged with the responsibility of determining the propriety of exemptions. See Rule 8.III.[2] The Department itself was not the ultimate decision-maker; the Board was, but the Board has never been presented with this issue and has therefore never had the opportunity to render a decision. Axley never requested that a "final determination" on the exemption be brought before the Board; had he done so, he could have made a complete record of his position under the procedures set out in the APA, and the circuit court would have had an administrative record to review. Because Axley had an available alternative remedy, he was not entitled to a writ of mandamus.

Axley's final argument is that, despite the Attorney General's opinion that Rule 8 was probably unconstitutional, Rule 8 was nev-

---

[2] Rule 8.III provides that the Director of the Department "will certify that an institution meets the requirements for an exemption under Ark. Code. § 6-61-301. The Arkansas Higher Education Coordinating Board shall make the final determination on any exemption should a question arise." Clearly, a question arose here, but Axley never presented the matter to the Coordinating Board.

ertheless still enforceable because it had not been amended or otherwise changed in accordance with the APA. He submits that the APA requires an agency seeking to adopt, amend, or repeal any rule to provide notice of such intention and afford an opportunity for all interested persons to submit data or arguments on the proposed amendment. *See* Ark. Code Ann. § 25-15-204 (Repl. 2002).

■ However, it is unnecessary for us to reach the merits of this argument, because, as discussed above, we have determined that Axley failed to demonstrate that he had a clear and certain right to a writ of mandamus, and that he had no other alternative remedy. In sum, we conclude that the trial court's denial of Axley's petition for writ of mandamus did not amount to an abuse of discretion, and we therefore affirm.

CORBIN, J., not participating.