HELENA-WEST HELENA SCHOOL DISTRICT #2 of
PHILLIPS COUNTY, Arkansas; Rudolph Howard, Interim Super-
intendent in His Individual and Official Capacity; and Lisa Baker
in Her Individual and Official Capacity as Principal of West Side
Elementary School of the Helena-West Helena School District *v.*
The CIRCUIT COURT of PHILLIPS COUNTY, Arkansas

06-1284                                                  247 S.W.3d 823

Supreme Court of Arkansas
Opinion delivered January 25, 2007

*Rieves, Rubens & Mayton,* by: *Kent J. Rubens,* for petitioners.

DONALD L. CORBIN, Justice. Petitioners are the Helena-West Helena School District, the District's Interim Su-
perintendent, Rudolph Howard, and Lisa Baker, Principal of West
Side Elementary School. They are seeking either a writ of prohibition
or, alternatively, certiorari, to prevent the Respondent, the Circuit
Court of Phillips County, Arkansas, from further exercising jurisdic-
tion in the instant matter. In support of their petition, they assert that
the trial court acted wholly without jurisdiction when it entered a
temporary restraining order in this case, because the parties seeking
that restraining order failed to first exhaust their administrative rem-
edies. As Petitioners are seeking a writ of prohibition or certiorari, our
jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(3). We deny the
petition.

The facts underlying this case indicate that Jimmy and
Coretta Brown filed a complaint in the Phillips County Circuit
Court on October 24, 2006, alleging that their two minor chil-
dren, J.B., age nine, and Y.B., age eleven, both students at West

Side Elementary, had been verbally abused and attacked by the school's principal, Ms. Baker, on or about October 18, 2006, in a confrontation that resulted in the children being escorted from the building and placed under arrest by the West Helena Police Department.[1] The complaint further alleged that the Browns were subsequently notified that their two children had been expelled from the Helena–West Helena School District for the remainder of the year. Plaintiffs averred that the expulsion would cause irreparable harm to their minor children and further that they would be denied due process, as they alleged that there was no school board within the Helena–West Helena School District. The Browns requested the trial court to intervene and issue a temporary restraining order enjoining the Petitioners from expelling their children.

On October 31, 2006, the trial court entered an order granting the request for the temporary restraining order, prohibiting any further action related to their expulsion. In addition, the order required that the children be immediately transferred and placed into appropriate classes at Beechcrest Elementary School.

This court issued a stay of the trial court's October 31 order, pending review of Petitioners' request for extraordinary relief. On December 7, 2006, this court ordered the parties to this matter to submit simultaneous briefs by December 21, 2006. Petitioners are the only party to have submitted a timely brief.[2] We now consider the merits of the instant petition.

As their first point on appeal, Petitioners contend that a writ of prohibition is warranted in this matter, as the Browns failed to exhaust their administrative remedies before seeking redress in circuit court. Specifically, Petitioners contend that no final action has been taken in the matter, as only a recommendation of

---

[1] Disciplinary records from the school that are included in the record reveal that on the morning of October 18, Ms. Baker encountered Y.B. and J.B. in the hallway and instructed them to go to the cafeteria. Once in the cafeteria, Y.B. and another student engaged in a verbal disagreement. Y.B. and J.B. then left the cafeteria and proceeded to Ms. Baker's office. According to the report filed by Ms. Baker, J.B. slapped her across the face. Y.B. tried to take a tape recorder from her hand and then placed her open palm on Ms. Baker's nose. The report concluded that the children, who were cursing and yelling, left the office, kicked the emergency bar on an exit door, and left the school building.

[2] Counsel for the Browns tendered a "Second Response and Objection to Issuance of Writ of Certiorari" on December 27, 2006. As the time for filing briefs had already elapsed, this second response was not timely filed and will not be considered by this court.

suspension has been made, and that the Browns failed to avail themselves of the opportunity of two separate hearings before the school board. Thus, according to the Petitioners, the trial court was without jurisdiction to hear the Browns' complaint. Petitioners further point out that the school district, pursuant to Ark. Code Ann. § 6-18-507 (Repl. 1999), has the right to expel a student, and that a trial court's right to review the ultimate decision of expulsion is on an abuse-of-discretion standard, not on a *de novo* basis, as would be the case here if the Browns were allowed to proceed.

In their initial response to this petition, the Browns argued that extraordinary relief was not warranted, as Petitioners have another adequate remedy available at law, namely an appeal of the trial court's order granting the temporary restraining order. The Browns are correct. Because an order granting a temporary restraining order is immediately appealable, Petitioners should have filed an appeal from the trial court's order, as opposed to seeking a writ of prohibition or certiorari.

It is well settled that a writ of prohibition is an extraordinary writ that is only appropriate when the lower court is wholly without jurisdiction. *Jordan v. Circuit Court of Lee County*, 366 Ark. 326, 235 S.W.3d 487 (2006); *Ouachita R.R., Inc. v. Circuit Court of Union County*, 361 Ark. 333, 206 S.W.3d 811 (2005); *Patterson v. Isom*, 338 Ark. 234, 992 S.W.2d 792 (1999). Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Ulmer v. Circuit Court of Polk County*, 366 Ark. 212, 234 S.W.3d 290 (2006); *Conner v. Simes*, 355 Ark. 422, 139 S.W.3d 476 (2003). In *Conner*, we thoroughly explained our standard of review for a writ of prohibition and stated:

> The writ is appropriate only when there is no other remedy, such as an appeal, available. Prohibition is a proper remedy when the jurisdiction of the trial court depends upon a legal rather than a factual question. This court confines its review to the pleadings in the case. Moreover, prohibition is never issued to prohibit a trial court from erroneously exercising its jurisdiction.

355 Ark. at 425-26, 139 S.W.3d at 478 (citations omitted). In *Ulmer*, 366 Ark. at 215-16, 234 S.W.3d at 294, we further explained that "writs of prohibition are prerogative writs, extremely narrow in scope and operation; they are to be used with great caution and forbearance." Simply stated, writs of prohibition should issue only in cases of extreme necessity. *Id.*

Petitioners concede that they have sought a writ of prohibition even though our case law dictates that a writ of prohibition cannot be invoked to correct an order already entered, *see Bates v. McNeil*, 318 Ark. 764, 888 S.W.2d 642 (1994), but argue that a writ of certiorari is warranted for the reasons set forth in *Conner*, 355 Ark. 422, 139 S.W.3d 476. There, we reiterated the standards for determining the propriety of a writ of certiorari and stated as follows:

> A writ of certiorari is extraordinary relief, and we will grant it only when there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. In determining its application, we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of fact, or to reverse a trial court's discretionary authority. A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, *and there is no other adequate remedy*.

*Id*. at 428, 139 S.W.2d at 479-80 (emphasis added) (citations omitted). Thus, it appears from Petitioners' brief that they realize that they are not entitled to a writ of prohibition, as the trial court has already entered the order granting the temporary restraining order, but instead attempt to avail themselves of a writ of certiorari.

This court has explained that certiorari is available in the exercise of this court's superintending control over a tribunal that is proceeding illegally where no other adequate mode of review has been provided. *Beverly Enters.-Ark., Inc. v. Circuit Court of Independence County*, 367 Ark. 13, 238 S.W.3d 108 (2006); *Lenser v. McGowan*, 358 Ark. 423, 191 S.W.3d 506 (2004). As previously explained, it applies where the proceedings are erroneous on the face of the record and where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion. *Arkansas Dep't of Human Servs. v. Mainard*, 358 Ark. 204, 188 S.W.3d 901 (2004). A manifest abuse of discretion is discretion exercised improvidently or thoughtlessly and without due consideration. *Jones Rigging & Heavy Hauling, Inc. v. Parker*, 347 Ark. 628, 66 S.W.3d 599 (2002).

While Petitioners' argument that the trial court was without jurisdiction to entertain the Browns' complaint because of their failure to exhaust their administrative remedies seems well taken, it

is not enough to establish entitlement to extraordinary relief, either in the form of prohibition or certiorari. This court has repeatedly held that prohibition and certiorari will only lie in cases where there is no other adequate remedy available to a party. *See Conner*, 355 Ark. 422, 139 S.W.3d 476. It is axiomatic that where an appeal is available, another adequate remedy exists. *Manila Sch. Dist. No. 15 v. Wagner*, 357 Ark. 20, 159 S.W.3d 285 (2004).

In the present case, the trial court issued a temporary restraining order preventing the children from being expelled from school. Such an interlocutory order is specifically appealable under Ark. R. App. P. – Civ. 2(a)(6). *See also AJ&K Operating Co., Inc. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004) (rejecting the appellees' contention that the appellants' interlocutory appeal from the grant of a temporary restraining order was not cognizable under our appellate rules); *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002) (holding that an interlocutory appeal from a temporary restraining order is permissible under this court's rules). Because the relief requested by Petitioners is available through an appeal of the trial court's order, they are not entitled to extraordinary relief.

A similar result was reached by this court in *Weaver v. Simes*, 365 Ark. 289, 229 S.W.3d 15 (2006). There, petitioner Johnny Weaver sought a writ of prohibition, mandamus, or certiorari after the trial court entered a temporary restraining order reinstating the former chief of police to his job. This court denied the requested relief, noting that "each of these three extraordinary writs are not available when (1) there is another adequate remedy, such as an appeal." *Id.* at 293, 229 S.W.3d at 18 (quoting *Wagner*, 357 Ark. at 26, 159 S.W.3d at 290). In so ruling, the court noted that the petitioner could raise all the issues he asserted in his emergency petition in an appeal.[3]

█ Accordingly, as Petitioners may raise the issues regarding the propriety of the trial court's order granting the temporary

---

[3] In *Weaver*, this court noted that the petitioner, prior to seeking extraordinary relief, filed a notice of appeal on May 17, 2005, from several orders entered by the trial court, including the January 3, 2005, order granting the temporary restraining order, in support of its conclusion that petitioner had an adequate remedy at law available. In the present case, Petitioners have not yet filed their notice of appeal, as this court issued a stay of all proceedings on November 9, 2006. The lack of a notice of appeal does not negate the fact that an adequate remedy at law exists to resolve the issues raised by Petitioners.

restraining order in an appeal, we deny their request for a writ of prohibition or certiorari.

Before concluding, we note that Petitioners additionally argue that the order entered by the trial court is also deficient on its face, as it fails to comply with Ark. R. Civ. P. 65. Specifically, Petitioners contend that the trial court's order is deficient in that it makes no finding that Petitioners are likely to succeed on the merits as required by Rule 65.

Again, any issue regarding the sufficiency of the temporary restraining order or its compliance with Rule 65 is one that may be addressed in an appeal. *See Smith*, 355 Ark. 510, 140 S.W.3d 475 (holding that this court reviews the two essential components of a preliminary injunction: irreparable harm, and likelihood of success on the merits, under an abuse of discretion standard).

Petition denied.

HANNAH, C.J., and BROWN, J., dissent.

R OBERT L. BROWN, Justice, dissenting. The parents of the suspended students in this case (the Browns) bypassed the administrative remedies provided by the school district and, instead, rushed immediately into circuit court to obtain a temporary restraining order (TRO) to prevent the suspension. In issuing the TRO, the circuit judge, without question, exceeded his authority when administrative remedies provided by the school district were still available for the Browns to pursue. I would grant the school district's petition for *certiorari* and require that the school district's remedies first be exhausted before a complaint is filed in circuit court. Not to do so affirms the circuit judge's error in wading into the high risk area of school discipline before the school district had finally decided the matter.

The majority opinion says the school district should have appealed the decision rather than petition for extraordinary relief and for that reason denies the petition. This, of course, has the effect of allowing the Brown children to attend school within the school district. I could not disagree more. This is a situation that cries out for immediate resolution so as not to further hamper discipline within the school district and the education of the Brown children. The majority's decision, which requires an appeal, denigrates the necessity for a speedy decision. The keystone of the majority opinion is that an appeal is an adequate remedy that

should have been pursued by the school district. It certainly is not an adequate remedy now, because the appeal time for appealing the TRO has expired. Beginning a new appeal after a final order is entered will only delay matters more and unduly thwart the objectives of both the school district and the Browns.

This court has defined an adequate, alternative remedy to extraordinary relief as follows: "the alternative remedy must be 'plain and complete and as practical and efficient to the ends of justice and its proper administration as the remedy invoked.' " *Axley v. Hardin*, 353 Ark. 529, 536, 110 S.W.3d 766, 770 (2003) (quoting *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998)); *see also* 55 C.J.S. *Mandamus* § 19 (2006) (other remedy to *mandamus* must be equally convenient, beneficial, and effectual). Again, appealing a final order at some point down the line is woefully inefficient and does not come close to being adequate.

The question then is whether the school district should have appealed the TRO back in November 2006, rather than petitioning for *certiorari* after the circuit judge granted a TRO. In analyzing this point, the time frame is important. The TRO was issued on October 31, 2006, and stayed by this court at the request of the school district on November 9, 2006. The school district's petition for emergency relief was filed one day earlier on November 8, 2006, and included the necessary pleadings as attachments and a prayer for expedited consideration. A response was filed by the Browns on November 21, 2006. The time for appeal of the TRO expired on November 30, 2006.

No doubt, speed was a critical consideration for the school district. There is also no question but that an appeal, even when expedited, is a more cumbersome process. A record must be filed to start the appeal process, and a motion to expedite must be filed by the appellant with time allowed for the appellee to respond. I cannot say the school district erred by putting this case on the emergency track with a petition for *certiorari*. The school district's goal was to have the matter resolved before commencement of school in January. A petition for *certiorari*, not surprisingly, appeared to be the appropriate route to take.

Cases cited by the majority in defense of dismissing this matter and delaying resolution are not apposite. In *Weaver v. Simes*, 365 Ark. 289, 229 S.W.3d 15 (2006), we dismissed the petition for emergency relief *because the petitioner had also appealed the matter.* We correctly

observed that the petitioner had an alternative, adequate remedy — an appeal — and that he was pursuing it. In a later case, *Sims v. Circuit Court of Pulaski County*, 368 Ark. 498, 247 S.W.3d 493 (2007), we similarly observed that the petitioner had asked for extraordinary relief *while also appealing a related case that raised the same issue.* We correctly observed again that an adequate remedy in the form of an appeal was available to the petitioner, and that he was pursuing it. That is not the situation in the case before us.

There is another point that needs to be highlighted. This is not a case where a petitioner seeks emergency relief in the form of *certiorari* after he has allowed his appeal time to expire. We have denied such efforts in the past. *See, e.g., Gran v. Hale*, 294 Ark. 563, 567, 745 S.W.2d 129, 131 (1988) ("Certiorari will not be used for the correction of mere error where the right of appeal has been lost due to the fault of the petitioner."); *Ricci v. Poole*, 253 Ark. 324, 485 S.W.2d 728 (1972). Here, the petition for *certiorari* was filed well within the appeal time. The Browns in their response did mention that the school district had an alternative remedy on November 21 but never moved to dismiss the petition on that basis. Nor did this court advise the school district that it was limited to an appeal. Instead, the appeal time expired while this court set an expedited briefing schedule on the petition for *certiorari. Now* this court says the school district should have appealed the TRO. It occurs to me that this court should have denied the petition for *certiorari* before the appeal time ran if that is the basis on which we are now dismissing the school district's petition.

This court has been assiduous in the past in avoiding intervention by the courts in matters best left to school authorities. We said as much two years ago. *See Johnson v. Hargrove*, 362 Ark. 649, 210 S.W.3d 79 (2005). We also have been quick to allow extraordinary relief where to wait for an appeal would cause the demise of what is sought to be protected. *See Mears v. Hall*, 263 Ark. 827, 838, 569 S.W.2d 91, 96 (1978) ("Utilizing the remedy of appeal would probably result in the demise of the public defender system while that remedy was being pursued."). Here, by the time a final order is entered and an appeal pursued, the one-year period of the suspension may well have expired.

The parties deserve a decision in this case. I would grant the school district's petition.

HANNAH, C.J., joins this dissent.

## SUPPLEMENTAL OPINION ON GRANT OF REHEARING
### MARCH 15, 2007

*Rieves, Rubens & Mayton*, by: *Kent J. Rubens*, for petitioners.

R OBERT L. BROWN, Justice. The petition for rehearing is granted, and the petition for writ of *certiorari* is granted.

Petitioners Helena-West Helena School District, Rudolph Howard as interim superintendent, and Lisa Baker as principal of West Side Elementary School (collectively referred to as the "School District"), petition for a writ of *certiorari* or prohibition in response to the circuit court's order granting the request of Jimmy Brown, Jr. and Coretta Brown (the "Browns") for a temporary restraining order ("TRO"). The School District argues that the circuit court had no subject-matter jurisdiction to hear the Browns' claims because the expulsion order was not final and because the Browns failed to exhaust their administrative remedies.

On October 24, 2006, the Browns filed a complaint as parents and next of kin of their children, Y.B. and J.B., who were students at West Side Elementary School in West Helena in October of 2006. Y.B. was in the sixth grade and J.B. was in the fourth grade. The complaint described an altercation between Y.B. and J.B. and the principal of the school, Lisa Baker. The Browns alleged in their complaint that when Lisa Baker's son, Mack Baker, called J.B. a "nigger," Principal Baker intervened to uphold the conduct of her son and that she physically attacked J.B. The Browns declared that Principal Baker verbally and physically attacked J.B. They concede, however, that J.B. struck Principal Baker. According to the complaint, Y.B. came to the assistance of her younger brother and requested that she be allowed to call her parents. That request was denied by Principal Baker, they alleged. The Browns also alleged that Principal Baker placed Y.B. and J.B. outdoors without any protection and had them arrested. According to the Browns, Principal Baker's actions were due to racism and bias. The Browns based their legal theories on the case of *Lake View School District No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), and on violation of the Arkansas Civil Rights Act.

Principal Baker wrote a summary of the incident leading to the school's expulsion of J.B. and Y.B. on October 19, 2006. She states the incident occurred on October 19, 2006.[1] She wrote in

---

[1] In their complaint, the Browns assert that these events occurred on October 18, 2006.

her summary that at around 7:20 a.m., she asked J.B. and Y.B. not to stand in the front lobby of the school, but that they could go to breakfast or to the computer lab or they could sit in the hall. They replied that they were waiting on someone, to which she responded, "[y]ou must go on, we don't wait on anyone." She wrote that both students headed toward the cafeteria, where they both encountered problems. Principal Baker had them come to the office. She noted that they came back in the hall toward the office and turned around yelling profanities. At that time, J.B. went out the back door of the sixth-grade hall, and Y.B. decided to go to the office. Y.B. told Principal Baker, "you better beat me then, because if Brittany is there I'm going to get her." When they got to the office Principal Baker asked Mrs. Hunt to get the tape recorder off her desk. Y.B. told Principal Baker that she was going to break the recorder. At about that time, J.B. arrived in the office and yelled, screamed, and cursed at Principal Baker.

Principal Baker noted that everything then moved to the foyer outside the office. She wrote that Mr. Means arrived and that Ms. Fears and Mrs. Thrower were trying to get other children out of this area.[2] Principal Baker said that J.B. attacked the visitor sign-in sheet, and Y.B. was trying to take the tape recorder out of her hand. Principal Baker wrote that she told Y.B. she was not going to take it out of her hand, when Y.B. put her hand on her nose (open palm to her nose). At this time, J.B. slapped the left side of Principal Baker's face, and Mr. Means tried to grab him. Principal Baker told Mr. Means to let J.B. go, and J.B. yelled and cursed all the way down the sixth-grade hall and kicked the panic bar to get the door open. She added that Y.B. followed J.B. out the door.

Also on October 19, 2006, Principal Baker sent two notices of recommended expulsion from West Side Elementary School to J.B. and Y.B.'s father. In the notice regarding J.B., Principal Baker charged him with defiance of authority, abusive language, and staff assault. In the notice regarding Y.B., she charged her with defiance of authority and abusive language toward a school employee.

---

[2] While it is unclear from the partial record in this case what positions Mrs. Hunt, Mr. Means, Ms. Fears, and Mrs. Thrower hold, it seems apparent that all of these people are employees of the School District.

Principal Baker recommended that both students be expelled for one year. The notices also informed the parents that the students would have a right to a hearing to be scheduled by the school superintendent and School Board.

On October 20, 2006, Rudolph Howard, the school Superintendent, wrote letters to J.B. and Y.B.'s mother regarding each of her children. Superintendent Howard informed Coretta Brown that the school was recommending that her children be expelled for one year and that due-process hearings were scheduled for each of her children and her before the School Board on October 24, 2006 at 9:00 a.m.[3] He also noted in both letters that he called her on October 20, 2006, at 11:40 a.m., to confirm the appointment and that she hung up the telephone on him the first time and rudely told him to "talk to my lawyer." He added that when he called back a second time, since he did not know who her lawyer was, she hung up on him again. Superintendent Howard's letters further informed Mrs. Brown that her children would have an opportunity to tell their side of the story and present witnesses at the hearing. His letters noted that at the end of the hearings, the School District would state its final position on whether it wished to modify the school's recommendation or continue its quest for expulsion of each of her children. According to the Superintendent's letters, if the School District decided to pursue expulsion further, the Browns could appeal to him as Superintendent.

Rather than participating in the due-process hearing on October 24, 2006, the Browns filed their complaint in circuit court on that date, as described above. On October 26, 2006, the Browns moved for a TRO to stop the expulsion of the Brown children on the basis that the School District was violating their right to attend public school in accordance with Article Fourteen of the Arkansas Constitution. The Browns alleged that the expulsion was harsh, unreasonable, and not rationally related to any conceivable violation of policies governing conduct within the School District. They argued, in addition, that the actions of the School District violated due process and would exclude the Brown children from school, thereby causing irreparable harm to their

---

[3] The letter regarding J.B. stated that a due-process hearing was scheduled for Coretta and Jimmy at 9:00 a.m. on October 24, 2006. The letter concerning Y.B. informed Coretta that a due-process hearing was scheduled for Y.B. and her at 10:00 a.m. on October 24, 2006.

educational endeavors now and for the rest of their adolescent lives. The Browns requested a TRO until the court could make a determination of the rights pled and that the court further find that the children had suffered irrevocable harm and they had no other adequate remedy at law if the court did not enjoin the School District.

On October 31, 2006, the court entered an order granting the Browns' request for a TRO. In its order, the court noted that the children had not yet been expelled from the school but added that they were currently expelled from classes. In addition to granting the TRO requiring the children to be placed immediately into appropriate classes, the court also found that they should be transferred, as per the request in the motion for TRO, to Beechcrest Elementary School until further directions of the court.

On November 8, 2006, the School District filed its petition for writ of *certiorari* or prohibition and record of proceedings with the Circuit Court of Phillips County listed as appellee. The following day, this court granted a stay of the TRO, ordered any response to the petition for writ of *certiorari*/prohibition to be filed by November 20, 2006, and determined that we would take this petition as a case. We also ordered simultaneous briefs to be filed on December 21, 2006. The first response to the School District's petition was filed on behalf of the Browns as "co-respondents" and was tendered on November 21, 2006, which was one day late.[4] The brief of the petitioner was timely filed on December 21, 2006. The Browns did not file a brief in this case. Rather, they filed a second response and objection to issuance of a writ of *certiorari* on December 28, 2006, and asserted that they were unable to comply with the court's directive to file a brief because there was no record filed.[5]

In its petition for writ of *certiorari* or prohibition, the School District makes two arguments: (1) petitioners are entitled to a writ of *certiorari* or, in the alternative, a writ of prohibition; (2) on the face of the record, injunctive relief could not be granted by the circuit court.

---

[4] The Browns never formally petitioned to intervene in the School District's petition for extraordinary relief. Nevertheless, they are the real parties in interest, and this court considered their first response in its original petition.

[5] A partial record was filed by the School District on November 8, 2006.

The School District argues that it is entitled to a petition for writ of *certiorari* because the expulsion order was not final and because the Browns failed to exhaust their administrative remedies before the School Board prior to seeking judicial review. The School District compares this case to *Ford v. Arkansas Game & Fish Commission*, 335 Ark. 245, 979 S.W.2d 897 (1998), where, as in this case, there had been no final action taken by the petitioners. Here, the School District asserts that the Browns chose to avoid the opportunity for a speedy hearing before the School Board to determine the claims involved in this case and sought judicial intervention before the Board had made a final decision concerning the recommendation of expulsion. According to the School District, if this court allows one to avoid the procedure set out in the statute for suspension or expulsion by alleging racism and bias, and seeking injunctive relief, then the circuit courts of this state will be open to decide all discipline matters involving public schools. The School District notes that the Browns should not be permitted to avoid a hearing and review at this point. Rather, the Browns must first raise all of their arguments at the School Board level pursuant to Ark. Code Ann. § 6-18-507 (Repl. 1999) and obtain a final expulsion decision prior to seeking judicial review.

The School District also distinguishes this case from the case of *Springdale Board of Education v. Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987). In *Springdale Board of Education*, it maintains, the School Board had made a final decision prior to the chancellor's consideration of the request for injunctive relief. In the instant case, it emphasizes that it has the right by statute to expel a student under § 16-18-507 so long as it provides due-process hearings.

In short, the School District encourages this court to look with disfavor on the procedure employed by the Browns. It argues that the Arkansas statutes are clear — that the hearing regarding expulsion is to be before the School Board and not the court. According to the School District, there could not be a more obvious case of unwarranted judicial interference with the operation of the school system in violation of not only § 6-18-507, but also the decisions of this court which hold that a court is without subject-matter jurisdiction to hear a claim until administrative action is final and one has exhausted his or her administrative remedies. *See, e.g., Stanton v. Am. Mfrs. Mut. Ins. Co.*, 362 Ark. 96, 207 S.W.3d 456 (2005) (holding that the trial court lacks jurisdic-

tion over a case and the complaint should, therefore, be dismissed where the plaintiff fails to exhaust his or her administrative remedies prior to filing a lawsuit in circuit court). In light of this, the School District asserts that it is entitled to relief by *certiorari* because the circuit judge acted in excess of his jurisdiction and thereby committed a gross abuse of discretion.

For its second argument, the School District contends that on the face of the record, injunctive relief should not have been granted by the circuit court. It points out that the circuit court's order on its face fails to comply with Rule 65 of the Arkansas Rules of Civil Procedure because the order contains no finding that the Browns were likely to succeed on the merits and no finding of irreparable harm. The School District advances the argument that because the statutes of this state permit expulsion, one cannot claim, as a matter of law, that expulsion (which has not yet been ordered by the School Board) irreparably harms a student.

Although the Browns, as co-respondents, failed to file a brief in this matter, they did file two responses to the School District's request for extraordinary relief. In their first response to the School District's request for a petition for writ of *certiorari* which they filed on November 21, 2006, the Browns asserted that this court, by granting the stay of the circuit court's order, has already destroyed the ability of the Brown children to receive an education within the public school system of the State of Arkansas in an orderly manner, in violation of the *Lake View* cases. The Browns also asserted that a writ of *certiorari* is inappropriate in this case, where the standard is an abuse of discretion. Further, they claimed that a writ of *certiorari* should not be granted here because there is an adequate remedy at law, which is an ordinary appeal of the circuit court's decision.

The Browns further argued in their first response that they were facing irreparable harm to the educational rights of their children, if they were expelled for a year or more due to the instant litigation. They urged that there is no chance for any student in the school system to receive due process when the hearing and appeal are before the School Board and Superintendent. According to the Browns, it would have been futile for them to attempt to exhaust their administrative remedies under these circumstances where those accusing the Brown children of violations were, in fact, the

judge and jury of the sanctions to be imposed against those children.[6]

This court's standard of review for a petition for writ of *certiorari* is as follows:

> A writ of certiorari is extraordinary relief. *Ark. Dep't of Human Servs. v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003). In determining its application we will not look beyond the face of the record to ascertain the actual merits of a controversy, or to control discretion, or to review a finding of fact, or to reverse a trial court's discretionary authority. *Id.* There are two requirements that must be satisfied in order for this court to grant a writ of certiorari. The first requirement is that there can be no other adequate remedy but for the writ of certiorari. Second, a writ of certiorari lies only where (1) it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, *or* (2) there is a lack of jurisdiction, an act in excess of jurisdiction on the face of the record, or the proceedings are erroneous on the face of the record. *Id.*

*Ark. Game & Fish Comm'n v. Herndon*, 365 Ark. 180, 182, 226 S.W.3d 776, 777 (2006).

We initially address the requirement that there be no adequate remedy as an alternative to a writ of *certiorari*. *See, e.g., Sims v. Cir. Ct. of Pulaski County*, 368 Ark. 498, 247 S.W.3d 493 (2007) (holding that a petition for an extraordinary writ should not lie where an adequate remedy in the form of an appeal is available to the petitioner). In its original opinion, this court dismissed the School District's petition for *certiorari* for the reason that an alternative, adequate remedy did exist in the form of an appeal. *See Helena-West Helena Sch. Dist. #2 of Phillips County v. Circuit Court of Phillips County*, 368 Ark. 549, 247 S.W.3d 823 (2007). In its petition for rehearing, the School District counters the assertion that an interlocutory appeal of the TRO is an adequate remedy under these facts. We agree with the School District.

The School District contends in its rehearing petition that this court has treated a petition for *certiorari* as an appeal in the past

---

[6] We do not consider the Browns' second response filed on December 27, 2006, because it was untimely. By this court's *per curiam* order, responses were due by November 20, 2006, and briefs by December 21, 2006.

when the petition is filed before the time for appeal has expired.[7] The School District emphasizes that its *certiorari* petition was filed eight days after the entry of the TRO. Moreover, the School District urges that its *certiorari* petition is broader than a mere appeal from the TRO because it seeks a court order dismissing the Browns' complaint with its multiple allegations in its entirety for lack of subject-matter jurisdiction due to the absence of a final expulsion decision and the failure to exhaust administrative remedies.

The School District is right on both counts. First, this court has treated petitions for writs of *certiorari* as appeals in the past when the petition is filed within the appeal time. *See Williamson v. Mitchell Auto Co.*, 181 Ark. 693, 27 S.W.2d 96 (1930) (holding that this court will treat a petition for writ of *certiorari* as an appeal where the time for an appeal has not expired); *Miller v. Tatum*, 170 Ark. 152, 279 S.W. 1002 (1926) (holding that where the time for appeal has not yet expired, it is proper for this court to disregard the method by which the cause was presented to this court and to treat the case as an appeal from the judgment of the lower court); *see also Ark. Pub. Defender Comm'n v. Greene County Circuit Court*, 343 Ark. 49, 53 n.1, 32 S.W.3d 470, 473 n.1 (2000) (stating that our jurisdiction is by way of *certiorari* or appeal where the petitioner also had standing to bring an appeal and where the lower court was without jurisdiction to hear a claim or issue a particular remedy).

Secondly, and more importantly, we are convinced that the School District is correct in pointing out that it desires not merely to prosecute an interlocutory appeal to dissolve the TRO but rather to challenge the subject-matter jurisdiction of the circuit court to hear any allegations or prayer for relief in the Browns' complaint. We agree that those are two different matters. This court has made it clear that the alternative remedy to extraordinary relief "must be 'plain and complete and as practical and efficient to the ends of justice and its proper administration as the remedy involved.' " *Axley v. Hardin.* 353 Ark. 529, 536, 110 S.W.3d 766, 770 (2003) (quoting *Hanley v. Ark. State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998)). Here, that is not the case. We conclude that the dismissal of the petition for writ of *certiorari* due to an alternative, adequate remedy was error. We turn then to the merits of the petition.

---

[7] The Browns filed no response to the petition for rehearing.

■ The kernel of the School District's argument for *certiorari* is the circuit court did not have subject-matter jurisdiction to hear the Browns' complaint because the expulsion decision was not final and the Browns failed to exhaust their administrative remedies before the School Board prior to seeking judicial intervention. Section 6-18-507 of the Discipline Subchapter of the Education Code specifically provides for an administrative procedure in connection with a public school's recommendation of expulsion, including both a hearing and an appeal process, and we hold that that was the remedy for the Browns to pursue.

In *Bowman, supra,* which was cited by both parties, this court considered the question of whether the trial court had jurisdiction to decide Bowman's request for injunctive relief. We concluded that the trial court did have this jurisdiction, since Bowman was entitled to establish her right to attend school by testing the School Board's actions in enforcing a school policy against her. As noted by the School District in this case, however, the School Board in *Bowman* had already made the decision to expel the student involved. The instant case is at odds with those facts, as there has been no final action by the School Board on the expulsion recommendation.

In *Ford, supra,* this court recognized the distinction between the question of whether administrative remedies had been exhausted and the question of whether an administrative action must be final before it is judicially reviewable. This court quoted the United States Supreme Court to the effect that while the policies behind the two doctrines are similar, "the finality requirement is concerned with whether the initial decision[-]maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Ford,* 335 Ark. at 253, 979 S.W.2d at 901, quoting *Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193 (1986). We affirmed an order of dismissal in *Ford* on the basis that the Game and Fish Commission had not taken final action on the matter.

In the case before us, neither final action on the issue by the School Board nor any effort by the Browns to exhaust their remedies before the School Board is evident. Indeed, the admin-

istrative process before the School Board never began because the Browns avoided their administrative remedies under § 6-18-507 and rushed into court to obtain the TRO. Lack of finality and failure to exhaust administrative remedies clearly preclude judicial review. *See Ford, supra; Austin v. Centerpoint Energy Arkla*, 365 Ark. 138, 226 S.W.3d 814 (2006); *Old Republic Surety Co. v. McGhee*, 360 Ark. 562, 203 S.W.3d 94 (2005).

The dissent discards the fact that in the cases it cites the petitioner had also filed a direct appeal in the same case or a related case, or the time for filing an appeal had passed, or the court's jurisdiction was not exceeded, or the case was distinguishable on the facts. The dissent also disregards the fact that the School District filed its petition for writ of *certiorari* within the time frame of an appeal. And, third, the School District validly contends that it sought by petition not merely to limit itself to dissolving the TRO. Rather, it sought to have the *full complaint dismissed*, including the Browns' claims under our *Lake View* decision and under the Arkansas Civil Rights Act. An appeal limited to dissolving the TRO was not adequate for that purpose. The School District pursued a reasonable course, and one that this court's jurisprudence has recognized, when it petitioned this court for a writ of *certiorari* challenging the circuit court's hasty entry of a TRO before the School District had taken final action.

There is one final point. This court historically has been reluctant to insinuate itself into school operations, including discipline matters, until the school procedures for relief have run their course. We said as much in *Fortman v. Texarkana School District No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974).

We grant the petition and issue the writ of *certiorari* because the circuit court clearly exceeded its jurisdiction in issuing the TRO before the School Board had made its decision on expulsion. The case, accordingly, was not ripe for judicial review because there was no final administrative action to review under § 6-18-507. The circuit court's action in this regard was a plain, manifest, clear, and gross abuse of discretion. We set aside the TRO.

Petition for Rehearing Granted.

Petition for Writ of *Certiorari* Granted.

GLAZE, CORBIN, and IMBER, JJ., dissent.

Tom Glaze, Justice, dissenting. The majority opinion states that this court has treated petitions for writs of certiorari as appeals in the past when the petition is filed within the appeal time; it relies on two old cases for this proposition. *See Williamson v. Mitchell Auto Co.*, 181 Ark. 693, 27 S.W.2d 96 (1930) (holding that this court will treat a petition for writ of certiorari as an appeal where the time for an appeal has not expired); *Miller v. Tatum*, 170 Ark. 152, 279 S.W. 1002 (1926).

The rule adopted in these two cases makes no sense. Of course, a party has thirty days in which to file a notice of appeal. Why wouldn't the party do so, rather than filing a petition for writ of certiorari within that thirty-day period and asking this court to treat his petition as an appeal? The rule is misleading and confusing and just plain wrong.

Imber, J., joins.

Donald L. Corbin, Justice, dissenting. Never in all of my days on the appellate courts of Arkansas have I seen an opinion that is more results oriented than the majority's decision to grant the school district's petition for rehearing. The majority has effectively turned our law on extraordinary writs on its ear. Under the majority's analysis, a party can seek a writ of certiorari, and even if an extraordinary writ is not warranted, still have the matter heard because this court will now treat a petition for certiorari as an appeal. The majority notes that we have in the past treated such petitions as appeals, and we have, most recently in 1930.

What disturbs me the most is the fact that the majority cites to *Williamson v. Mitchell Auto Co.*, 181 Ark. 693, 27 S.W.2d 96 (1930), and *Miller v. Tatum*, 170 Ark. 152, 279 S.W. 1002 (1926), in support of its decision, but ignores recent cases where we have refused to grant certiorari when a party has the remedy of an appeal available to it. *See, e.g., Sims v. Circuit Court of Pulaski County*, 368 Ark. 498, 247 S.W.3d 493 (2007); *Weaver v. Simes*, 365 Ark. 289, 229 S.W.3d 15 (2006); *Cockrum v. Fox*, 359 Ark. 508, 199 S.W.3d 69 (2004); *May Constr. Co., Inc. v. Thompson*, 341 Ark. 879, 20 S.W.3d 345 (2000); *Cooper Cmtys., Inc. v. Circuit Court of Benton County*, 336 Ark. 136, 984 S.W.2d 429 (1999). *See also Conner v. Simes*, 355 Ark. 422, 139 S.W.3d 476 (2003) (holding that

certiorari was not a viable option to prohibition where the petitioner had the remedy of an appeal available to him).[1]

Moreover, the majority's opinion is in direct conflict with our prior acknowledgment that certiorari may not be used as a substitute for appeal. See Ark. Dep't of Human Servs. v. Circuit Court of Sebastian County, 363 Ark. 389, 144 S.W.3d 738 (2005); Conner, 355 Ark. 422, 139 S.W.3d 476; Arnold v. Spears, 343 Ark. 517, 36 S.W.3d 346 (2001); King v. Davis, 324 Ark. 253, 920 S.W.2d 488 (1996); Neal v. Wilson, 321 Ark. 70, 900 S.W.2d 177 (1995) (per curiam); Gran v. Hale, 294 Ark. 563, 745 S.W.2d 129 (1988).

The majority makes much ado about the school district's assertion that they are not simply challenging the court's order granting the temporary restraining order, but are seeking dismissal of the Browns' complaint because of a lack of subject-matter jurisdiction. According to the district, there has been no final action on the expulsion, and the Browns have failed to exhaust their administrative remedies. The majority focuses on these allegations as an explanation as to why this petition for extraordinary relief is being given special treatment, but a review of our case law on exhaustion of administrative remedies reveals the majority's flawed analysis.

In Stanton v. American Manufacturers Mutual Insurance Co., 362 Ark. 96, 207 S.W.3d 456 (2005), a case cited by the majority, this court determined that a complaint should have been dismissed where the circuit court lacked subject-matter jurisdiction due to the appellant's failure to exhaust her administrative remedies. What is important to note about Stanton, is that it was a direct appeal from a decision by the circuit court. In other words, it was not a case where the appellee sought an extraordinary writ due to a failure to exhaust administrative remedies. Likewise, the case of Ford v. Arkansas Game & Fish Commission, 335 Ark. 245, 979 S.W.2d 897 (1998), relied on by both the school district and the majority, is a direct appeal of an order dismissing the appellant's suit because of a failure to exhaust administrative remedies, and not a case involving an extraordinary writ. In fact, the majority does

---

[1] Just recently this court unanimously denied a "Motion for Expedited Writ of Prohibition or, in the Alternative, a Writ of Certiorari" where the appellant had also filed a notice of appeal. See Potter v. Honorable Kim Martin Smith, No. 07-161.

not cite to one case where this court has treated a petition for certiorari as an appeal and held that the lower court lacked jurisdiction because of a party's failure to exhaust administrative remedies. Now, however, the proverbial floodgate is open to other litigants who may choose to circumvent the normal appellate process in favor of the more expeditious extraordinary writ.

In the present case, the school district never argued to the circuit court that the Browns failed to exhaust their administrative remedies or that the circuit court lacked jurisdiction; thus, the school district never gave the circuit court an opportunity to act accordingly. Instead, the district raced to this court seeking our intervention, and the majority is all too happy to oblige, seemingly intent on making sure that the Browns' children are not allowed to attend school anywhere in the district. While I certainly do not condone the inappropriate and disruptive behavior of J.B. or Y.B., I also cannot ignore the fact that the principal's son referred to J.B. with a hateful racial slur.

There is simply nothing about this case that warrants the majority's decision to ignore our well-established precedent that an extraordinary writ will not lie where another adequate remedy at law exists. This case is simply about the majority wanting to reach a certain result and doing so at the expense of our long-standing jurisprudence. For this reason, I respectfully dissent.

IMBER, J., joins in this dissent.